161 P.3d 1269

**Rafael MELGAR, Petitioner/Appellant,**

v.

**Lilliana CAMPO, Respondent/Appellee.**

**No. 1 CA–CV 06–0408.**

Court of Appeals of Arizona,
Division 1, Department C.

July 26, 2007.

Steven D. Keist, P.C. By Steven D. Keist, Glendale, Attorneys for Petitioner/Appellant.

Lilliana G. Campo, Respondent/Appellee, Phoenix, In Propria Persona.

**OPINION**

PORTLEY, Judge.

¶ 1 We are asked to determine whether the superior court can modify an out-of-state child custody order. We find that the Uniform Child Custody Jurisdiction and Enforcement Act requires that the family court must confer with the judge who issued the out-of-state custody order and/or get the out-of-state court to release its continuing jurisdiction over its custody order before modifying an out-of-state order.

**FACTUAL BACKGROUND**

¶ 2 Lilliana Campo ("Mother") and Rafael Melgar ("Father"), an unmarried couple, had a child in 2003. The family remained together at Pope Air Force Base, North Carolina, until September 2004 when Mother took the child and moved. Mother allowed Father to visit the child until November 2004 when she stopped the visits and all contact with Father.

¶ 3 The next month Father initiated a paternity proceeding in Cumberland County, North Carolina. Mother did not attend any of the custody hearings, but the day before the final custody hearing she sent the court a letter indicating she would be unable to attend the hearing. She also made allegations of domestic violence. The North Carolina court awarded custody of the child to Father.

¶ 4 Father could not find Mother or the child and hired a private investigator. The investigator found Mother and the child in Arizona. Father then filed an action in the Superior Court of Maricopa County to register and enforce the North Carolina custody order. After a series of hearings, the family court assumed emergency jurisdiction because of the domestic violence allegations [1] in the fall of 2005 and temporarily modified custody to give Mother sole custody of the child.

¶ 5 The family court, in spite of Father's request, did not contact the North Carolina court to address which court should resolve the custody dispute. Instead, the family

---

1. Mother had secured an ex parte order of protection against Father before he had located her in Arizona or filed his action.

court held an evidentiary hearing, registered the North Carolina custody order, and modified it to give Mother sole custody. Father filed an appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101 (2006).

## DISCUSSION

¶ 6 Father contends that the family court abused its jurisdiction by modifying custody in violation of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See* A.R.S. §§ 25–1001 to –1067 (2001). We review this matter de novo because it involves a matter of statutory interpretation. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App.2005).

¶ 7 The UCCJEA is a uniform statute that has been adopted by forty-five states,[2] including Arizona and North Carolina,[3] to create consistency in interstate child custody jurisdiction and enforcement proceedings. *Welch–Doden v. Roberts*, 202 Ariz. 201, 208, ¶ 29, 42 P.3d 1166, 1173 (App.2002); Unif. Laws Ann. ("U.L.A.") Child Custody Jurisdiction Enforcement Act ("CCJEA") Prefatory Note (2007). The UCCJEA was designed to remedy jurisdictional inconsistencies and ambiguities that arose from its predecessor, the Uniform Child Custody Jurisdiction Act ("UCCJA"), codified at A.R.S. §§ 25–431 to – 454 (repealed 2001). U.L.A. CCJEA Prefatory Note; Kelly Gaines Stoner, *The Uniform Custody Jurisdiction and Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 75 N.D. L.Rev. 301, 301 (1999); David Carl Minneman, Annotation, *Construction and Operation of Uniform Child Custody Jurisdiction & Enforcement Act*, 100 A.L.R.5th 1 § 2[a] (2002).

¶ 8 The UCCJA was designed to resolve which court has jurisdiction in interstate custody disputes. *J.D.S. v. Franks*, 182 Ariz. 81, 86, 893 P.2d 732, 737 (1995). The stated purpose of the UCCJA was to

1. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

2. Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

3. Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

4. Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

5. Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

6. Avoid relitigation of custody decisions of other states in this state insofar as feasible.

7. Facilitate the enforcement of custody decrees of other states.

8. Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.

---

**2.** The legislation has also been adopted in the District of Columbia, the Virgin Islands, and is pending in two states. *See* http://www.nccusl. org/Update /uniformact_factsheets/uniformacts-fs-uccjea.asp (last visited June 14, 2007).

**3.** *See* N.C. Gen.Stat. §§ 50A–101 to –317 (1999).

9. Make uniform the law of those states which enact the uniform child custody jurisdiction act.

*Id.* at 86–87, 893 P.2d at 737–38.

¶ 9 To accomplish these purposes, the UCJA gave a court four methods to analyze whether it should assert jurisdiction in an interstate child custody proceeding. *Welch–Doden,* 202 Ariz. at 207, ¶ 26, 42 P.3d at 1172. The court could decide which state was the child's home state, which state has the most significant connections, what is in the child's best interests, and whether emergency jurisdiction was appropriate. *Id.* All four methods were given equal priority. *Id.* at 208, ¶ 30, 42 P.3d at 1173. These multiple jurisdictional bases, and conflicting federal statutes[4] passed after the UCCJA, led to inconsistent results in interstate custody proceedings because of competing custody proceedings and uncertainty as to which custody orders were to be recognized and enforced. Patricia M. Hoff, *The A.B.C.'s of the UCCJEA: Interstate Child–Custody Practice Under the New Act,* 32 Fam. L.Q. 267, 268–69 (1998); U.L.A. CCJEA, Prefatory Note.

¶ 10 The UCCJEA was created, in part, to address the issue of competing orders and duplicative jurisdiction. *Welch–Doden,* 202 Ariz. at 208, ¶ 29, 42 P.3d at 1173; U.L.A. CCJEA Prefatory Note; Hoff, *supra,* at 268–69; Stoner, *supra,* at 301. As a general rule, the UCCJEA requires that "[a] court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter."

A.R.S. § 25–1053(A) (Supp.2006). Specifically, A.R.S. § 25–1032[5] reflects the UCCJEA goal of allowing the court that makes the original custody determination to retain exclusive, continuing jurisdiction over that order. *See also* U.L.A. CCJEA § 202; Hoff, *supra,* at 268–69 ("The UCCJEA rejects the concurrent modification interpretation and adopts a rule of exclusive continuing jurisdiction.").

¶ 11 The rule of exclusive, continuing jurisdiction remains the jurisdictional lodestar until either the court that originated the order determines that the child's connection with the state is too attenuated or that the child *and* parents no longer reside in the state. A.R.S. § 25–1032(A); U.L.A. CCJEA Prefatory Note; U.L.A. CCJEA § 202 cmt. With certain exceptions, *infra* ¶ 17, the decision to discontinue exclusive, continuing jurisdiction belongs to the court exercising it, and no other. U.L.A. CCJEA § 202 cmt. (stating that the use of "a court of this state" under the above provision "makes it clear that the original decree State is the sole determinant of whether jurisdiction continues."). Accordingly, a party who wishes to modify the original decree must either return to the court with exclusive, continuing jurisdiction to modify the order or get that court to relinquish jurisdiction. *Id.*

¶ 12 If a case involves emergency situations, courts are authorized to enter temporary custody orders to protect children when the child, his or her parent, or a sibling is at

---

4. In 1980, thirteen years after the enactment of the UCCJA, the Parental Kidnapping Prevention Act ("PKPA") was passed. *See* 28 U.S.C. § 1738A (2006). The PKPA mandated that a court that had entered a child custody order in compliance with the statute's jurisdictional requirements would retain exclusive, continuing jurisdiction "as long as ... such State remains the residence of the child or of any contestant." 28 U.S.C. § 1738A(d).

5. Arizona Revised Statutes § 25–1032 states:

A. Except as otherwise provided in § 25–1034, a court of this State that has made a child custody determination consistent with § 25–1031 or 25–1033 has exclusive, continuing jurisdiction over the determination until either of the following is true:

1. A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships.

2. A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

B. A court of this state that has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 25–1031.

risk. A.R.S. § 25–1034(A) (Supp.2006).[6] Emergency jurisdiction and the accompanying orders, however, are a temporary exception to the exclusive, continuing jurisdiction of the issuing court. The emergency orders are expressly for the purpose of allowing the parent in danger to retain custody of the child while he or she returns to the court issuing the original decree for a modification. A.R.S. § 25–1034(C); U.L.A. CCJEA § 204(c) & cmt. ("The purpose of the order is to protect the child until the State that has jurisdiction ... enters an order.").

¶ 13 Here, based on Mother's testimony about domestic violence and the family court's determination of her credibility, the court initially assumed emergency jurisdiction. The court, however, did not contact the North Carolina court, *see* A.R.S. § 25–1034(D), or require Mother to return to North Carolina for a modification. *Id.* at (C).

¶ 14 After resolving the emergency, the family court later found that a valid out-of-state custody decree was issued before the Arizona proceedings began. The court stated,

> At the time Father filed his Complaint, North Carolina had jurisdiction under Article 2 of the Uniform Child Custody Jurisdiction and Enforcement Act. At the time Father sought to register the foreign order, it had not been vacated, stayed or modified by a Court having jurisdiction to do so. Mother had actual notice of the proceedings in North Carolina from which the amended Custody and Support Order was issued.

¶ 15 The family court then modified the North Carolina custody order. The court,

however, had not found that North Carolina had relinquished its continuing, exclusive jurisdiction over the child or its custody proceedings. In fact, there is nothing in the record to indicate that the issue was addressed, that North Carolina had the opportunity to determine whether it wanted to relinquish jurisdiction, or that the family court could exercise jurisdiction under the UCCJEA.

¶ 16 Instead, the family court found that Arizona was the child's home state, that the child had substantial connections with Arizona, and that exercising jurisdiction would be in the child's best interests, factors only found in the UCCJA.[7] The court did not follow the UCCJEA requirements before modifying the North Carolina custody order. As a result, the modification is precisely the type of competing custody order the UCCJEA seeks to prevent.

¶ 17 The UCCJEA does allow modification of an out-of-state custody order if the court has "jurisdiction to make an initial determination under [A.R.S.] § 25–1031 [ (A)(1) or (2) ]" and either (1) the out-of-state court decided that it does not have exclusive, continuing jurisdiction or that this court is a more convenient forum, or (2) that the child and parents are no longer residing in the state that issued the decree. A.R.S. § 25–1033(A). An "[i]nitial determination," as defined by the UCCJEA, "means the *first* child custody determination concerning a particular child." A.R.S. § 25–1002(8) (emphasis added); *see also Welch–Doden*, 202 Ariz. at 204, ¶ 14, 42 P.3d at 1169 (distinguishing between jurisdiction for an *"initial* custody

---

6. The court that is taking emergency jurisdiction is required, upon notice of an existing custody order, to contact the issuing court to facilitate modification or retain jurisdiction. A.R.S. §§ 25–1010(D), 25–1034(D); *see also* U.L.A. CCJEA § 204(d).

7. The family court also assumed jurisdiction based on its status as a more convenient forum. The "inconvenient forum" provision states:
   A court of this state that has jurisdiction under this chapter to make a child custody determination may *decline to exercise its jurisdiction* at any time *if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate*

forum. The issue of inconvenient forum may be raised on motion of a party, the court's own motion or request of another court.
A.R.S. § 25–1037(A) (emphasis added).
   The statutory provision clearly provides that the state with jurisdiction may decline jurisdiction after consideration of several factors indicating that another state may be more appropriate. A.R.S. § 25–1037(A)–(B); *see, e.g., Shanoski v. Miller*, 780 A.2d 275, 279–80 (Me.2001); *In re McCoy*, 52 S.W.3d 297, 305–06 (Tex.App.2001). The statute, does not, however, give a court that does not have jurisdiction the ability to usurp the authority of the court with exclusive, continuing jurisdiction.

determination" and "*continuing* jurisdiction" controlled by A.R.S. § 25–1032).

¶ 18 In essence, before it could modify the North Carolina custody order pursuant to A.R.S. § 25–1033, the family court was required to find that it was making the first custody determination or that either the North Carolina court had relinquished exclusive, continuing jurisdiction or that Mother, Father, and the child had all moved from North Carolina.

¶ 19 Here, the North Carolina custody decree, as the family court recognized, was the first child custody determination. Moreover, there is no indication in the record that North Carolina has relinquished its continuing jurisdiction or that Father has moved from North Carolina.[8] As a result, the court could not exercise jurisdiction to modify the North Carolina order pursuant to A.R.S. § 25–1034. Although the court could exercise temporary emergency jurisdiction in light of the domestic violence testimony, North Carolina has not relinquished continuing jurisdiction. Several jurisdictions have reached the same result under the UCCJEA. *See, e.g., E.H. v. State,* 23 P.3d 1186, 1191–92 (Alaska 2001) (stating that the court that makes the initial custody order retains jurisdiction until the child no longer has any substantial ties with the state); *In re Bellamy,* 67 S.W.3d 482, 484 (Tex.App.2002)

(same); *Ruth v. Ruth,* 32 Kan.App.2d 416, 83 P.3d 1248, 1253–54 (2004) (same); *Fish v. Fish,* 266 Ga.App. 224, 596 S.E.2d 654, 655–56 (2004) (same); *Staats v. McKinnon,* 924 So.2d 82, 84 (Fla.Dis.Ct.App.2006) (same); *Lester v. Popper,* 18 P.3d 377, 377–78 (Okla. Civ.App.2000) (stating that the forum has no jurisdiction to modify another state's decree absent the parties demonstrating that the initial court relinquished jurisdiction); *Vannatta v. Boulds,* 318 Mont. 472, 81 P.3d 480, 483 (2003) (same); *Snow v. Snow,* 189 Or. App. 189, 74 P.3d 1137, 1140–41 (2003) (same). The family court did not have jurisdiction to modify the North Carolina custody order.

## CONCLUSION

¶ 20 For the foregoing reasons, we vacate the family court's order granting Mother sole legal custody and remand for proceedings consistent with this decision.

CONCURRING: DANIEL A. BARKER, Judge and SUSAN A. EHRLICH, Judge.

---

8. Father appended a May 2006 order from the North Carolina court that it wanted to retain jurisdiction in his reply brief. However, we do not consider matters outside the court record. *See Lewis v. Oliver,* 178 Ariz. 330, 338, 873 P.2d 668, 676 (App.1993).