NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MELANIE BLYTHE HOPE, *Petitioner/Appellant*,

*v.*

JASON DOUGLAS HOPE, *Respondent/Appellee*.

No. 1 CA-CV 13-0112
FILED 3-4-2014

Appeal from the Superior Court in Maricopa County
No. FC2011-093940
The Honorable Timothy J. Ryan, Judge

**DISMISSED IN PART; VACATED IN PART; AFFIRMED IN PART**

COUNSEL

Melanie Blythe Hope, Mexico
*Petitioner/Appellant*

The Murray Law Offices PC, Scottsdale
By Stanley D. Murray
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

---

**G O U L D,** Judge:

¶1     Melanie Blythe Hope ("Mother") appeals several post-decree orders issued in Arizona after a consent decree was entered in South Carolina.  Mother argues the family court did not have subject matter jurisdiction to modify the custody or child support orders entered in South Carolina.  We agree that the family court did not have subject matter jurisdiction to modify the child support order, and conclude the family court's order modifying child support is void.  On this record we cannot determine whether the court had subject matter jurisdiction to modify the child custody order.  Therefore, we remand to the family court for a determination of jurisdiction to modify custody under the UCCJEA.  However, we conclude the family court did have jurisdiction to enforce the custody/parenting time orders contained in the South Carolina decree, and therefore affirm the family court's orders enforcing the South Carolina decree.

**FACTS AND PROCEDURAL BACKGROUND**

¶2     Mother and Jason Douglas Hope ("Father") married in 1990, and over the course of their marriage had three children.  In 2009, while residing in South Carolina, Mother and Father separated.  After Mother filed for divorce, the parties entered into a settlement agreement.  The South Carolina court subsequently entered a divorce decree incorporating the terms of the parties' settlement agreement.  When the decree was entered in June 2011, Mother was a citizen and resident of Arizona, and Father was a citizen and resident of New York.

¶3     The consent decree awarded the parties joint custody of the children, while designating Mother as the primary residential parent.  Mother was also awarded $1,750.00 per month in child support.  The settlement agreement also contained language stating that future actions regarding custody and visitation "will be adjudicated in the home state of the minor children, and for purposes of the foreseeable future, the home state of the children is the State of Arizona."

¶4        While Mother and the children were residing in Arizona, Father filed the South Carolina divorce decree in Maricopa County Superior Court pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Arizona Revised Statutes ("A.R.S."), sections 12-1701 to -1708.  Father then sent Mother notice that he had filed the South Carolina decree in Arizona pursuant to A.R.S. § 12-1703(B).

¶5        Next, Father filed a petition in Maricopa County seeking to (1) prevent Mother from relocating to Mexico with the children and (2) modify custody.  Father alleged Mother was planning to relocate to Mexico with the children.  In the petition, Father requested the court to issue an order finding that Arizona had jurisdiction over the parties' divorce case, and that South Carolina had relinquished jurisdiction.  The record reflects, however, that the court never issued an order specifically addressing jurisdiction.

¶6        On September 12, 2011, Father filed a motion for temporary orders seeking temporary physical custody of the children.  Because Father was unable to serve Mother, the court subsequently granted his request to serve Mother by alternative service, which included service by email and facebook.  Mother filed an answer and counterclaim, seeking affirmative relief on a number of issues.  At an evidentiary hearing on November 7, 2011 the court found Mother had not complied with the parenting time orders contained in the South Carolina decree.  The court held Mother in contempt and required her to surrender her passport to the court and make arrangements for the return of the children to Arizona.

¶7        On November 30, 2011, the court held an emergency status conference after Mother had driven to Arizona and sent the police to Father's residence to seize the children from him.  After the conference the court suspended Father's child support obligations to Mother.  The court also took under advisement the parties' proposed parenting time schedules and Father's request for reimbursement of his travel expenses incurred in retrieving the children from Mexico.

¶8        The court granted Father's request for sole custody in January 2012.  The court also ordered that the children "shall not leave Maricopa County, Arizona, without the express written permission of this Court.  No exceptions." Finding "that Mother has acted unreasonable throughout these proceedings, and at times, has been less than candid with the Court," the court awarded Father $9,150.00 in attorneys' fees and

costs, and directed Mother to reimburse Father $3,600.00 for his travel expenses to retrieve the children.

¶9　　　　In April 2012, the court terminated its temporary suspension of child support payments and reinstated the original South Carolina child support order. Thereafter, on April 16, 2012, Father filed a certified copy of the South Carolina child support order in Maricopa County Superior Court, Arizona, pursuant to the Uniform Interstate Family Support Act, ("UIFSA"), A.R.S. §§ 12-1201 to -1342. Then, on April 19, 2012, Father filed a petition to modify child support in the pending Maricopa County proceeding.[1]

¶10　　　　In August 2012, the court directed the parties to submit written memoranda outlining their positions regarding child support. The court stated it would modify child support without a further hearing and would base its decision on the evidence that had already been presented and the parties' memoranda. The court also directed Father to submit an application for attorneys' fees "for having to read, consider, and respond to Mother's many, many motions, pleadings and petitions."

¶11　　　　Mother filed a motion for change of judge for cause in September 2012, claiming the judge was exercising "extreme bias, prejudice, and lack of impartiality." The court referred the matter to the presiding judge. The presiding judge denied Mother's motion, noting that Mother's allegations were "insufficient as a matter of law to proceed with an evidentiary hearing on this matter."

¶12　　　　Father filed a memorandum regarding modification of child support, but Mother did not file a memorandum as ordered by the court. On November 5, 2012, the court modified child support, ordering Mother to pay support to Father. The court also awarded Father additional attorneys' fees in the amount of $3,089.50 and set an evidentiary hearing regarding contempt for January 7, 2013.

¶13　　　　Mother failed to appear at the contempt hearing, and the court affirmed its judgment for Father's travel expenses and attorneys' fees in a total amount of $16,467.00. Further, the court found Mother to be in contempt for (1) not having made any payments on the previously

---

[1]　　　Father again requested, and was granted, permission to use alternative service to serve Mother with his petition.

imposed fees and travel expenses and (2) failing to appear at the hearing. The court then issued a child support arrest warrant for Mother, setting the purge bond in the amount of $10,000.00.

¶14 Mother filed a Rule 60(c)[2] motion for relief on May 2, 2013, arguing, among other issues, that the court lacked subject matter jurisdiction to modify child custody and child support. The court denied Mother's motion as untimely.

¶15 On May 24, 2013, Mother was incarcerated on the civil arrest warrant issued by the court. On June 3, 2013, Mother's family posted the $10,000.00 purge bond. However, Mother again failed to appear before the court on June 25, 2013. As a result, the court found Mother to be in direct contempt of court and referred the matter to the presiding judge for a determination of whether she should be classified a vexatious litigator.

¶16 On September 6, 2013, the court held an evidentiary hearing to determine whether Mother was a vexatious litigator. Mother failed to appear at this hearing, and the court affirmed its earlier findings and directed Father to again submit an affidavit for attorneys' fees; the court subsequently awarded Father $1,080.00 in attorneys' fees.

¶17 Mother has filed numerous amendments to her notice of appeal throughout this litigation. Some of these amendments have been dismissed as untimely.[3] However, we conclude Mother has timely appealed the family court's orders concerning custody, child support, enforcement of the parenting time provisions in the South Carolina decree and the related sanctions and attorneys' fee awards.

## Discussion

### I. Subject Matter Jurisdiction

¶18 Mother argues the family court failed to determine whether there was proper subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), A.R.S. §§ 25-1001 to -1067, and the UIFSA to modify custody and child support. "[S]ubject

---

[2] Mother cites to rule 60(c), Ariz. R. Civ. P. in her motion; however, she uses this rule interchangeably with Rule 85(c), Ariz. R. Fam. L. P.

[3] *See* Order dated November 6, 2012, *Hope v. Hope*, 1CA-CV 12-0712; Order dated July 16, 2013, *Hope v. Hope*, 1CA-CV 13-0112.

matter jurisdiction cannot be waived and may be raised at any stage of a proceeding." *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 157, ¶ 57, 211 P.3d 16, 35 (App. 2009). The UCCJEA determines a court's subject matter jurisdiction with regard to modifying foreign custody orders, and the UIFSA determines a court's subject matter jurisdiction to modify foreign child support orders. A.R.S. §§ 25-1001 to -1067 (UCCJEA); A.R.S. §§ 25-1201 to -1302 (UIFSA). We review questions of jurisdiction under these statutes de novo. *See Duwyenie v. Moran*, 220 Ariz. 501, 503, ¶ 7, 207 P.3d 754, 756 (App. 2009) (UCCJEA); *McHale v. McHale,* 210 Ariz. 194, 196, ¶ 7, 109 P.3d 89, 91 (App. 2005) (UIFSA).

### a.      Jurisdiction Under The UCCJEA

**¶19**        Mother asserts the family court lacked jurisdiction under the UCCJEA to modify custody and parenting time. The purpose of the UCCJEA is to avoid duplication and conflict between two states concerning custody orders. *Melgar v. Campo*, 215 Ariz. 605, 607, ¶ 10, 161 P.3d 1269, 1271 (App. 2007). In order to effectuate this purpose, the UCCJEA favors "allowing the court that makes the original custody determination to retain exclusive, continuing jurisdiction over that order." *Id.* at ¶¶ 10, 11 ("The rule of exclusive, continuing jurisdiction remains the jurisdictional lodestar."); A.R.S. § 25-1032.

**¶20**        Jurisdiction to modify a prior child custody determination made by another state is governed under the UCCJEA as follows:

> Except as otherwise provided in section 25-1034, a court of this state shall not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under section 25-1031, subsection A, paragraph 1 or 2 and either of the following is true: [4]

---

[4]        Section 25-1031 states that a court has jurisdiction to make an initial child custody determination if:

> 1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

1. The court of the other state determines that it no longer has exclusive, continuing jurisdiction under section 25-1032 or that a court of this state would be a more convenient forum under section 25-1037.

2. A court of this state or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

**¶21**　　　In essence, A.R.S. § 25-1033 provides that an Arizona family court does not have jurisdiction to modify a foreign court's custody order unless the foreign court makes a determination that (1) it no longer has exclusive, continuing jurisdiction over the case,  or (2) the child and the child's parents no longer live in the foreign jurisdiction.  In the alternative, if there is no determination by the foreign court, A.R.S. § 25-1033 permits the Arizona family court to make a determination that the child and the child's parents do not presently reside in the foreign jurisdiction.

**¶22**　　　Here, it is clear that South Carolina was the home state when the South Carolina court entered the divorce decree addressing custody and visitation of the children.  However, the consent decree states that all future actions regarding child custody and visitation "will be adjudicated in the home state of the minor children, and for purposes of the foreseeable future, the home state of the children is the State of Arizona."  It would appear that this provision of the divorce decree, adopted and filed by the court in South Carolina, constitutes relinquishment of South Carolina's exclusive, continuing jurisdiction over the custody order.  The

---

2. A court of another state does not have jurisdiction under paragraph 1 or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 25-1037 or 25-1038 and both of the following are true:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.

record also indicates that Mother and the children were living in Arizona when the South Carolina court entered the divorce decree. Nonetheless, on October 5, 2011 – after Father filed his petition to modify custody in Arizona - the court in South Carolina entered an order regarding Mother's compliance with the divorce decree.

**¶23** It is not clear from this record whether South Carolina relinquished its continuing, exclusive jurisdiction. *See Melgar*, 215 Ariz. at 609, ¶ 18, 161 P.3d at 1273. Father relies on the language in the divorce decree stating that Arizona would be the home state as an indication that South Carolina has relinquished its jurisdiction; although that may be the case, the South Carolina court's October 5 order belies that conclusion. The record does not show that South Carolina relinquished its exclusive, continuing jurisdiction or that there was ever any communication between the South Carolina court and the family court in Arizona regarding which state would exercise jurisdiction over custody modifications. *See Id.* at 607, ¶ 10, 161 P.3d at 1271 ("The UCCJEA was created, in part, to address the issue of competing orders and duplicative jurisdiction."). The record is also devoid of any determination by either the South Carolina court or the family court that the children and their parents do not presently reside in South Carolina. Mother's and Father's many relocations have been an issue throughout these proceedings. Given this record, we cannot confirm whether the family court in Arizona had jurisdiction to modify the South Carolina custody order. We therefore remand for a determination pursuant to A.R.S. § 25-1033.

### c. Jurisdiction Under The UIFSA

**¶24** Mother contends the family court lacked subject matter jurisdiction to modify the child support order because it was not registered in compliance with the UIFSA.[5] *See Glover v. Glover*, 231 Ariz. 1, 2, ¶ 1, 289 P.3d 12, 13 (App. 2012) (holding compliance with the registration requirements is necessary to confer subject matter jurisdiction on the court). Because registration involves both statutory compliance and subject matter jurisdiction, we review whether the family court

---

[5] Mother also challenges the family court's jurisdiction to act under UEFJA; however, for a court to have jurisdiction to modify a child support order the UIFSA, not the UEFJA, governs. *Glover*, 231 Ariz. at 5, ¶ 16, 289 P.3d at 16 (stating that compliance with UEFJA does not satisfy the notice requirement contained in UIFSA and does not confer jurisdiction to modify support order).

followed the applicable registration statutes de novo. *Melgar*, 215 Ariz. at 606, ¶ 6, 161 P.3d at 1270.

¶25 For an Arizona court to have jurisdiction to modify a child support order entered in another state, the order must be registered in compliance with the UIFSA. A.R.S. §§ 25-1311, –1302; *Glover*, 231 Ariz. at 2, ¶ 1, 289 P.3d at 13. To register a child support order under the UIFSA the party must send a letter requesting registration and enforcement, two copies (one certified) of the original order, a sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage, and the names and relevant information regarding the obligor and obligee. A.R.S. § 25-1302(A). Upon receiving the request the court must file the support order as a foreign judgment and then provide notice of the registration to the non-registering party. A.R.S. § 25-1305; *Glover*, 231 Ariz. at 4, ¶ 10, 289 P.3d at 15. "[R]egistration in Arizona of a child support order issued in another state is necessary to confer subject matter jurisdiction on the superior court to modify the order." *Glover*, 231 Ariz. at 7, ¶ 22, 289 P.3d at 18.

¶26 Father did not register the South Carolina divorce decree in compliance with the UIFSA until July 2013. The court entered its order modifying child support, from which Mother appealed, on November 5, 2012. Therefore, we conclude the court acted without jurisdiction and we must vacate its order modifying child support.

## II. Mother's Remaining Arguments

¶27 Because we find the court lacked subject matter jurisdiction to modify the child support order, we conclude it lacked jurisdiction in its accompanying grant of attorneys' fees and costs in the amount of $3,089.50 and vacate that award. However, because we remand for the court to determine whether it had jurisdiction to modify custody, we also remand the court's related decision to grant Father attorneys' fees in the amount of $9,150.00 .

¶28 We conclude, though, that the family court did have jurisdiction to enforce the child custody order contained in the South Carolina decree. A.R.S. § 25-1053 ("A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter. . . ."). Therefore, the family court's November 7, 2011 order finding Mother had not complied with parenting time orders in the

custody decree and finding Mother in contempt of court for her noncompliance was within its power to "use any remedy available under any other law of this state to enforce a child custody determination made by a court of another state." A.R.S. § 25-1053(B). Accordingly, we affirm all of the family court's orders enforcing the South Carolina custody and support orders, including its related grant of attorneys' fees and travel expenses to Father. *See In re Marriage of Robinson and Thiel*, 201 Ariz. 328, 335, ¶ 19, 35 P.3d 89, 96 (App. 2001); *Cook v. Losnegard*, 228 Ariz. 202, 204, ¶ 9, 265 P.3d 384, 386 (App. 2011).

**¶29** Mother argues the family court did not comply with A.R.S. § 25-408 when it prevented her from relocating to Mexico with the children. That statute requires the court to consider a number of factors in determining the children's best interests when deciding issues of relocation. A.R.S. § 25-408(H); *see also Owen v. Blackhawk*, 206 Ariz. 418, 421, ¶ 11, 79 P.3d 667, 670 (App. 2003) (requiring specific findings in accordance with § 25-403(J) when a change in physical custody is involved in a relocation dispute). We disagree. The family court determined that Mother relocated the children to Mexico for the purpose of interfering with Father's parenting time. As a result, the family court enforced the written parenting time agreement contained in the South Carolina decree.

**¶30** Mother also claims the family court lacked personal jurisdiction over her because (1) she was residing in Mexico and (2) the court improperly allowed Father to serve her by alternative means in Mexico. However, Mother has waived any challenge to personal jurisdiction because she appeared in the matter and litigated it on the merits. *See Nat'l Homes Corp. v. Totem Mobile Home Sales, Inc.*, 140 Ariz. 434, 437, 682 P.2d 439, 442 (App. 1984).

**¶31** We will not address the remaining issues Mother has raised deeming them to be either moot or not properly before us.

### III. Attorneys' Fees On Appeal

**¶32** Mother requests attorneys' fees, costs, and expenses incurred throughout the litigation. Father also requests attorneys' fees under A.R.S. § 25-324.

**¶33** Because Mother represented herself, she is not entitled to an award of attorneys' fees. *Connor v. Cal-Az Props., Inc.*, 137 Ariz. 53, 56, 668 P.2d 896, 899 (App. 1983). Mother has been successful in vacating the court's child support modification ruling, so we award her costs incurred on appeal upon her compliance with Rule 21, Arizona Rules of Civil

Appellate Procedure. In our discretion, we deny Father's request for attorneys' fees.

**CONCLUSION**

**¶34** Because the family court had no jurisdiction to modify South Carolina's child support orders, we dismiss the appeal as to the child support order and instruct the family court to vacate its order modifying child support, as well as the accompanying fee award. *Glover*, 231 Ariz. at 7, ¶ 22, 289 P.3d at 18 (appellate court must dismiss appeal and instruct family court to vacate modification orders where family court's order modifying foreign child support order was void for lack of subject matter jurisdiction); *see McHazlett v. Otis Eng'g Corp.*, 133 Ariz. 530, 533, 652 P.2d 1377, 1380 (1982) ("If a lower court has no jurisdiction to issue an order an appeal from that order gives the appellate court no jurisdiction except to dismiss the appeal."). We remand to the family court for a determination of whether it has jurisdiction to modify South Carolina's custody order under the UCCJEA. Further, we affirm the family court's orders enforcing the South Carolina decree, including the related attorneys' fee awards, and we remand to the family court for further enforcement proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: mjt