NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ASHLEY ATKINSON, *Petitioner/Appellee*,

*v.*

NADINE MCINDOO, *Respondent/Appellant.*

No. 1 CA-CV 14-0124
FILED 1-8-2015

Appeal from the Superior Court in Maricopa County
No. FC2013-000759, FC2013-001652
(Consolidated)
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Ashley Atkinson, Goodyear
*Petitioner/Appellee*

Nadine McIndoo, Lauderhill, FL
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Michael J. Brown joined.

---

**J O N E S**, Judge:

¶1        In this child custody matter, Nadine McIndoo (Mother) appeals an order in which the trial court exercised jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at Arizona Revised Statutes (A.R.S.) sections 25-1001 to -1067,[1] and modified a New York child custody order awarding sole legal decision-making authority to Ashley Atkinson (Father).  For the following reasons, we affirm.

**FACTUAL BACKGROUND[2]**

¶2        Mother and Father are the biological parents of a child born in New York in 1998 (Child).  In 1999, a New York court awarded Mother physical and legal custody of Child and granted Father unsupervised parenting time.  Mother and Child moved to Florida in 2003, where they resided until the December 2012 incident giving rise to this litigation.

¶3        On December 20, 2012, Mother suffered a mental health crisis and was involuntarily hospitalized.  Florida authorities took temporary custody of Child and then released him to Father. Subsequently, Father and Child returned to Father's home in Arizona, where Father sought and was

---

[1]        Absent material revisions after the relevant dates, we cite the current version of the statutes and rules.

[2]        Mother filed an opening brief with attachments on April 4, 2014, and an identical opening brief without attachments on May 19, 2014; neither contains appropriate citations to the record, and only a few of the attachments are in the record on appeal.  On appeal, we consider only those items that are in the record. *See In re Property Located at 6757 S. Burcham Ave.*, 204 Ariz. 401, 405, ¶ 11, 64 P.3d 843, 847 (App. 2003) (citing *Ashton-Blair v. Merrill*, 187 Ariz. 315, 317, 928 P.2d 1244, 1246 (App. 1996)).

awarded temporary emergency custody by the Arizona court. After both New York and Florida declined to exercise jurisdiction, the Arizona superior court modified the New York custody order. The superior court awarded sole legal decision-making authority to Father, and granted Mother supervised parenting time until she satisfied several conditions, at which time Mother could exercise unsupervised parenting time.

¶4 Mother timely appealed the trial court's order. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I. Jurisdiction

¶5 Mother argues the Arizona court erred in exercising temporary emergency jurisdiction, and in concluding Arizona was Child's "home state." We review the superior court's exercise of jurisdiction *de novo*. *See State ex rel. Dep't of Econ. Sec. v. Tazioli*, 226 Ariz. 293, 294, ¶ 7, 246 P.3d 944, 945 (App. 2011) (citing *Guerra v. Bejarano*, 212 Ariz. 442, 443, ¶ 6, 133 P.3d 752, 753 (App. 2006)). To determine whether the Arizona court properly exercised jurisdiction pursuant to the UCCJEA, we are required to examine the procedural history of this case.

¶6 After Father returned to Arizona with Child in December 2012, he filed a petition to modify child custody and parenting time in Arizona on January 8, 2013.[3] Father simultaneously filed a motion for temporary custody. Mother's response to Father's first petition admitted proper venue in Arizona, confirmed the existing New York custody order, and asked she be declared the primary residential parent with sole legal decision-making authority. On the same day, Mother filed her own petition to enforce the New York custody order in a separate action in the Arizona court; the two cases were later consolidated.

---

[3] Although titled a "petition to establish," Father's petition asked the superior court to *modify* the 1999 New York custody order, and we treat it, as did the superior court, as a petition for modification. *See* Ariz. R. Civ. P. 8(e)(1) ("No technical forms of pleading or motions are required."); *Rodriguez v. Williams*, 104 Ariz. 280, 283, 451 P.2d 609, 612 (1969) (looking "to substance rather than to form" in determining intended effect of pleading).

¶7            At a January 30, 2013 hearing, the Arizona court found it appropriate to take emergency jurisdiction for sixty days, and awarded Father temporary sole legal decision-making authority during that period. The superior court heard from both parties, as well as a court-appointed advisor who had interviewed Child earlier that day. It specifically noted that this order would provide Father sufficient time to seek modification of the current custody order in either New York or Florida.

¶8            When Father learned that his New York petition to modify would not be resolved before the temporary order expired on April 1, 2013, he requested an extension. The superior court granted his request and extended the temporary order for ninety days. On April 2, 2013, Mother filed two pleadings: one repeated her request to enforce the New York custody order, and the second, alternatively, sought temporary legal decision-making authority.

¶9            The Arizona court held a hearing in April 2013, at which the New York judge appeared telephonically and stated on the record that New York would decline to exercise jurisdiction over Father's petition to modify legal custody. The trial court then affirmed its extension of Father's temporary custody and denied Mother's request for temporary legal decision-making authority.

¶10           The next month, Mother filed a third petition to enforce the New York custody order in the Arizona court. This petition included as an exhibit an "order to pick up minor child," issued ex parte the day prior by a Florida court, which stated that Florida had original jurisdiction, had jurisdiction to enforce the New York order, was Child's home state, and set an evidentiary hearing on June 3, 2013. In response, Father filed another petition to modify the New York order in the Arizona court.

¶11           At a hearing in May 2013, Mother informed the Arizona court that she had filed a petition in Florida seeking to enforce the New York order and that the Florida court would contact Arizona regarding its exercise of temporary emergency jurisdiction. The Arizona court denied Mother's request to dismiss temporary emergency jurisdiction, stating it would not do so until it conferred with the Florida court pursuant to the UCCJEA.

4

¶12 The Florida court postponed its hearing on the matter until August 9, 2013; consequently, the Arizona court extended its temporary custody order until the Florida court made a decision whether to exercise jurisdiction. When the Florida court subsequently declined jurisdiction, Father filed an amended petition in Arizona, seeking to modify the New York order, alleging Arizona was now Child's home state because Child had resided in Arizona for the past eight months. The Arizona court found it had jurisdiction pursuant to the UCCJEA because both New York and Florida had, by then, declined jurisdiction.

### A. Temporary Emergency Jurisdiction

¶13 Mother argues the Arizona court erred in assuming temporary emergency jurisdiction. To the contrary, we find the court complied with the UCCJEA in assuming temporary emergency jurisdiction over the custody issues.

¶14 The purpose of the UCCJEA is to resolve conflicts regarding jurisdiction in interstate custody disputes. *Melgar v. Campo*, 215 Ariz. 605, 607, ¶ 10, 161 P.3d 1269, 1271 (App. 2007) (citing *Welch-Doden v. Roberts*, 202 Ariz. 201, 208, ¶ 29, 42 P.3d 1166, 1173 (App. 2002)). Generally, the UCCJEA requires a court to recognize and enforce a prior custody order from another state court. *See* A.R.S. § 25-1053(A). Pursuant to the UCCJEA, a court that issues an original custody order retains exclusive, continuing jurisdiction until that court "determines that the child's connection with the state is too attenuated or that the child *and* parents no longer reside in the state." *Melgar*, 215 Ariz. at 607, ¶ 11, 161 P.3d at 1271 (emphasis in original) (citations omitted); *see also* A.R.S. § 25-1032(A). Thus, to modify an original custody order, a party must return to the issuing court and seek modification or ask that court to decline jurisdiction. *Melgar*, 215 Ariz. at 607, ¶ 11, 161 P.3d at 1271; *see also* A.R.S. § 25-1033.

¶15 Section 25-1034 provides an exception to the rule of exclusive, continuing jurisdiction in emergency situations. An Arizona court may exercise temporary emergency jurisdiction if the child is in Arizona and "has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." A.R.S. § 25-1034(A). Where there is a previous custody order that is entitled to be enforced, the temporary order must specify the period of time it will remain in effect to allow the party to obtain an order from the previous court with exclusive, continuing jurisdiction. A.R.S. § 25-1034(C). Here, the superior court found an emergency existed which would allow it to exercise temporary emergency jurisdiction.

**¶16**     The Arizona court abuses its discretion in making a factual determination where the record is "devoid of competent evidence to support the decision." *Platt v. Platt*, 17 Ariz. App. 458, 459, 498 P.2d 532, 533 (1972) (citing *Fought v. Fought*, 94 Ariz. 187, 188, 382 P.2d 667, 668 (1963)).  Here, the December 20, 2012 Florida incident report and testimony of the court employee who interviewed Child establish that Mother experienced a mental breakdown causing her to hold Child on the ground and pour a bottle of ammonia on him "to keep the demons out of him." Mother did not dispute the incident occurred, arguing instead Child was not at risk because she "tried to make arrangements" for Child in the event of hospitalization and had obtained medical assistance following the incident.  The superior court, therefore, did not err in concluding, based upon the record before it, that Child was subjected to mistreatment or abuse.

**¶17**     Mother argues Florida was Child's "home state," at the time Father filed the original petition. However, the Arizona court did not act inappropriately in exercising temporary emergency jurisdiction simply because another court could also have done so. *See J.D.S. v. Franks*, 182 Ariz. 81, 90, 94, 893 P.2d 732, 741, 745 (1995) (approving exercise of foreign court's emergency jurisdiction where court "could have found that there was an emergency because of the poor condition of the baby's health" even where an Arizona court also had jurisdiction).  Child was located in Arizona at the time of the petition, and the requisite emergency existed pursuant to A.R.S. § 25-1034(A).  The court was authorized to assume temporary emergency jurisdiction, and did so for a period of sixty days.  The order complied with A.R.S. § 25-1034(C), and we find no error in its form.

## B.     Continuation of Temporary Custody Order

**¶18**     Mother next argues the Arizona court abused its discretion in extending the temporary custody order and "unfairly extending the proceedings so that the result would allow the child to remain in Arizona for the 6 months that would make Arizona the domicile state of the child." We review the trial court's decision to grant a continuance for an abuse of discretion, and any related findings of fact for clear error. *See Yavapai Cnty. Juv. Action No. J–9365*, 157 Ariz. 497, 499, 759 P.2d 643, 645 (App. 1988) ("Motions to continue are addressed to the sound discretion of the trial court and its decision will not be reversed absent a clear abuse of discretion.").  Generally, an abuse of discretion occurs where the decision is "manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *Williams v. Williams*, 166 Ariz. 260, 265, 801 P.2d 495,

500 (App. 1990) (citing *Quigley v. City Court of Tucson*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (1982), and *Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40, 658 P.2d 835, 840 (App. 1982)).

**¶19** The Arizona court initially entered a sixty-day emergency temporary custody order, reasoning the period would be sufficient for Father to seek modification of the custody order in either the New York or Florida court. Father filed a petition for modification in New York less than thirty days later, and requested the temporary custody order be extended upon being advised it would take three to six weeks for the New York court to process the petition and set a hearing. The Arizona court extended the temporary custody order an additional ninety days to account for this additional time. Mother requested the court reconsider the order, which it declined following a hearing where it was revealed that Mother was continuing to place Child in the position of needing to care for her and asking Child to provide her information regarding Father's activities.

**¶20** After the New York court declined jurisdiction, Mother petitioned the Florida court for enforcement of the New York orders. The Florida court set a hearing to determine its jurisdiction nine days after the emergency temporary custody order was set to expire. The Arizona court thereafter extended the order a second time, upon Father's motion and without timely objection from Mother, for fifteen days, or until the Florida court exercised jurisdiction, whichever was earlier.

**¶21** There is no suggestion in the record that Father or the Arizona court acted intentionally to deprive another court of jurisdiction. Although Father testified he did not file for custody in Florida because he was, perhaps mistakenly, advised by child protective services workers in Florida and the clerk in New York that he should file in the state of his residence, the Arizona court continually expressed its belief that Florida would ultimately take jurisdiction over the matter. Each continuance was granted in consideration of a hearing set in another state's court that would ultimately determine that state's jurisdiction over the matter. It was not unreasonable to narrowly correlate the Arizona court's timelines with the related hearing schedules of the out-of-state courts, especially in this UCCJEA matter where the exercise of the Arizona court's jurisdiction might hinge on another court's decision, and there was no abuse of discretion in doing so.

### C.     Jurisdiction To Modify New York Custody Order

¶22     Mother also contends the Arizona court violated A.R.S. §§ 25-402, -1031, -1032, and -1033 by ultimately accepting jurisdiction to modify the New York custody order.  In its modification order, the superior court found:

> [T]he parties and the Child have resided in Arizona continuously for at least six months preceding the filing of the Petition to Establish Legal Decision Making (Custody) and Parenting Time, filed on January 8, 2013 (the "Petition").  This Court, therefore, has jurisdiction as Arizona is the "home state" of the Child. *See* A.R.S. § 25-1031.  Further, this Court has jurisdiction pursuant to A.R.S. § 25-402 and continuing jurisdiction pursuant to A.R.S. § 25-1032.

¶23     It is undisputed that Father brought Child to Arizona in late December 2012, and the Arizona court was incorrect in stating Mother and Child had resided in Arizona for at least six months preceding Father's January 2013 petition.  However, this misstatement is not fatal to the exercise of jurisdiction.

¶24     Because there was an existing New York custody order, the Arizona court was required to determine its jurisdiction, pursuant to A.R.S. § 25-1033.  The UCCJEA permits modification of another state's custody order where Arizona is the child's home state or the home state has declined jurisdiction pursuant to A.R.S. § 25-1031(A)(1) and (2), and:

> 1.     The court of the other state determines that it no longer has exclusive, continuing jurisdiction . . . or that a court of this state would be a more convenient forum . . . [; or]
>
> 2.     A court of this state or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

A.R.S. § 25-1033(A)(1)-(2).

¶25     Neither of the parties nor Child lived in New York, thereby satisfying the second prong of A.R.S. § 25-1031. Therefore, we must determine whether Arizona was Child's home state, or if not, whether Child's home state declined jurisdiction under A.R.S. § 25-1031(A)(1) or (2), which would allow the Arizona court to move forward with the modification.

¶26 For purposes of the UCCJEA, the "home state" is the "state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding, including any period during which that person is temporarily absent from that state." A.R.S. § 25-1002(7)(a); *see also Welch-Doden*, 202 Ariz. at 208-09, ¶ 33, 42 P.3d at 1173-74 ("[T]he applicable time period to determine 'home state' [for purposes of A.R.S. § 25-1031(A)(1)] is within six months before the commencement of the child custody proceeding.") (internal quotations omitted). Again, it is undisputed that Child lived in Florida for more than six consecutive months immediately preceding Father's petition.[4] Therefore, Florida was Child's home state.

¶27 However, the Florida court declined to exercise jurisdiction over this matter, finding Child was not located in Florida, the Arizona court had properly assumed emergency temporary jurisdiction "in substantial conformity with the UCCJEA," and Arizona should be treated as Child's "home state."[5] These statements support the Arizona court's exercise of jurisdiction.

---

[4] Father's January 2013 petition constituted the "commencement of the child custody proceedings." *See* A.R.S. § 25-1002(4)-(5). Florida was also the home state at the time Father filed the petition to modify legal decision-making on May 28, 2013 because Child had not continuously resided in Arizona for six months at any time before Father filed this petition. Regardless of which of Father's two petitions constituted the "commencement" of child custody proceedings, Child had not lived in Arizona for six consecutive months before either petition was filed. Mother's petitions to enforce the New York order did not constitute a "child custody proceeding" pursuant to A.R.S. § 25-1002(4)(b) and are, therefore, irrelevant to determining the child's home state.

[5] We note the Florida court's order available for our review, which was provided to the superior court by Father, is somewhat illegible, rendering the reasons for declining jurisdiction difficult to discern. As the appellant, Mother "is responsible for making certain the record on appeal contains all transcripts or other documents necessary for [this Court] to consider the issues raised on appeal." *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995); *see also* ARCAP 11(b) (explaining duty of appellant to order certified transcripts). In the absence of an adequate record, we assume the illegible portions of the Florida order would support the Arizona court's ruling. *See Renner v. Kehl*, 150 Ariz. 94, 97 n.1, 722 P.2d

¶28 Because both Child's home state and the issuing state declined jurisdiction, the Arizona court was entitled under A.R.S. § 25-1033 to modify the New York order. It did not err in doing so.

### D. Communication With Court Issuing Prior Child Custody Order

¶29 Mother also argues the Arizona court erred because it did not "immediately communicate directly with the Court in which a child custody determination ha[d] been made" in order to resolve the question of jurisdiction, and by instead "leaving it up to the parties to the Arizona proceeding to do the same."

¶30 Section 25-1034(D) provides that, where an Arizona court has been asked to exercise temporary emergency jurisdiction, and a prior proceeding or determination exists in another state, the court "shall immediately communicate with the other court." A.R.S. § 25-1034(D). The purpose of communication between the courts is to "resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order." *Id.*

¶31 The record does not indicate that the Arizona court initiated communication with either the New York or Florida court. However, based upon the timely communication that occurred between the various courts involved, we find no prejudice in any delay. *See Gutierrez v. Gutierrez*, 20 Ariz. App. 388, 389, 513 P.2d 677, 678 (1973) (noting failure to comply with a rule is not reversible error absent showing of prejudice) (citing *Rexing v. Rexing*, 11 Ariz. App. 285, 287, 464 P.2d 356, 358 (1970)). Prejudicial error is that which "substantially affects the rights and obligations of appellant[s] as to result in a miscarriage of justice," *id.* (citing *Kyne v. Eustice*, 215 Cal. App. 2d 627, 635 (1963)), and that prejudice must "appear from the record." *Dykeman v. Ashton*, 8 Ariz. App. 327, 329-30, 446 P.2d 26, 28-29 (1968) (finding no prejudice where nothing in record indicated correction of error complained of would have affected defendant's ability to prepare for trial).

---

262, 265 n.1 (1986) ("Without a record we must presume that the trial court properly exercised its discretion and that there was substantial evidence in the complete record to support the findings of the trial court.") (citing *Auman v. Auman*, 134 Ariz. 40, 42-43, 653 P.2d 688, 690-91 (1982), and *Visco v. Universal Refuse Removal Co.*, 11 Ariz. App. 73, 75-76, 462 P.2d 90, 92-93 (1969)).

¶32 Father filed a request with the New York court within thirty days of the Arizona court's exercise of temporary emergency jurisdiction. The matter was resolved through an "inter-court" conference involving the New York and Arizona courts in April 2014, at which time the New York court advised the Arizona court it would decline jurisdiction. Quickly thereafter, Mother filed a request with the Florida court, which declined jurisdiction in August 2014. The approximately ninety-day time frames for resolution of the jurisdictional issues is not atypical of a state court system. Whether the courts could have resolved the matter more quickly through direct communication is mere speculation, unsupported by evidence in the record. While it may have been the better practice for the Arizona court to initiate discussions regarding the matters enumerated in the statute, on these facts, we find no prejudicial error in its failure to do so.

## II.    Modification Order

¶33 Although not specifically disputing the Arizona court's order granting Father sole legal decision-making and primary physical custody, Mother argues the court erred in relying on information in the court-appointed advisor's report and Father's testimony which she alleged to be false.

¶34 "[W]e will not disturb the [superior] court's custody or parenting time orders on appeal absent an abuse of discretion." *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11, 304 P.3d 1093, 1096 (App. 2013). A court abuses its discretion if the record lacks competent evidence to support the superior court's decision, *Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999), or the court made "an error of law in the process of exercising its discretion." *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2, 118 P.3d 621, 622 (App. 2005). We defer to the superior court's opportunity to judge the witnesses' credibility and resolve conflicts in the evidence, *see Standage v. Standage,* 147 Ariz. 473, 479-80, 711 P.2d 612, 618-19 (App. 1985) (citing *Pima Cnty. Juv. Action No. S-139*, 27 Ariz. App. 424, 427, 555 P.2d 892, 895 (1976)), and uphold factual findings unless they are clearly erroneous, "even if substantial conflicting evidence exists." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 537,     ¶ 10, 96 P.3d 530, 535 (App. 2004) (citing *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003), and *Kocher v. Ariz. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9, 80 P.3d 287, 289 (App. 2003)).

¶35 In its thirteen-page order, the Arizona court detailed specific findings regarding the best interest factors set forth in A.R.S. § 25-403.01 and expressed continued concern regarding Mother's mental health as it

affected her ability to parent and caused her to exhibit bizarre behavior, including pouring ammonia on Child's legs to "burn the demons," the filing of false police reports between the two days of trial, and subsequent irrational communications with Father. The court further found "there is inadequate information that Mother has controlled her mental health issues and would be able to safely parent the Child." These findings form the basis of the court's grant of sole legal decision-making authority and primary physical custody to Father.

¶36 They are also supported by the record. Mother admitted she had been involuntarily committed for mental health treatment during each December from 2009 through 2012. Although Mother testified she was taking medication and participating in psychological counseling, she did not present any supporting evidence.[6] It was within the superior court's discretion to accept evidence that these efforts were not successful in managing Mother's behaviors. Specifically, the record reflects that, in the weeks between the days evidence was taken, Mother filed a false police report against Father, screamed at the officers for not substantiating her report, and relayed messages to Father from her dead husband.

¶37 The record further supports the superior court's finding that Mother had not taken any personal responsibility for events which occurred during the four preceding Decembers. Mother stated she was drugged on the first occasion by a jealous co-worker, and was discovered covered in blood opening someone else's mail. She testified she was committed on the second occasion after arguing with her preacher about his "incorrect preaching," and on the third, when she got lost and ran out of gas. Mother denied any mental health issues on these occasions, arguing instead that "every time . . . the police show up and talk to [her] . . . they run [her] Social [Security number]," see she was committed the previous year for mental health issues, and commit her again based solely upon this history.

¶38 Regarding the most recent occasion, Mother admits to pouring ammonia on Child after he fell on the ground, thinking "he got

---

[6] Contrary to Mother's assertion, it is the party, not the superior court judge, who is responsible for calling and questioning witnesses. *See State v. Coey*, 82 Ariz. 133, 138, 309 P.2d 260, 263 (1957) ("It is primarily the responsibility of the parties and not the court to insure that witnesses are present at the time of trial."). Mother rested on her own testimony, and her failure to secure the presence of doctors or therapists to support her position does not constitute error.

stung or something bit him in the grass." She then started praying "to rebuke you know all negative energy, negative things." She denied the incident occurred as a result of a mental health issue, testifying: "This incident didn't happen because I was losing my mind to go to the store to get ammonia. I went to the store to get ammonia to clean my house. . . . If [Child] had not thrown himself on the floor when he called somebody and they told him to stall on me, this whole entire incident would not have happened." The trial court was free to reject the otherwise unsupported and self-serving testimony of Mother as an interested party. *See Graham v. Vegetable Oil Prods. Co.*, 1 Ariz. App. 237, 241, 401 P.2d 242, 246 (1965) (citations omitted). In this case, the court's apparent choice to reject Mother's explanations was not error.

¶**39**      Moreover, although Mother stated in November 2013 that she had been incident-free since Child left her care, this time period did not include December. Given the prior history of incidences, each occurring mid-December for at least the previous four years, the Arizona court did not act arbitrarily in adopting the court-appointed advisor's recommendation that a psychological evaluation and additional period of observation was appropriate to satisfy "concerns of [whether] or not Mother is mentally stable to parent [Child] consistently."

¶**40**      Mother also presents numerous arguments in her briefs attacking the credibility of Father, the court-appointed advisor, the superior court, and various other individuals. However, she does not contend the arguments she now makes, nor the evidence she asserts supports them, were unavailable to her at the time of trial. Because she did not introduce the purported evidence or testimony, or make the arguments in her closing during trial, they are waived. *Maher v. Urman*, 211 Ariz. 543, 548, ¶ 13, 124 P.2d 770, 775 (App. 2005) (noting argument not raised in lower court is waived on appeal) (citing *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 15, 99 P.3d 1030, 1035 (App. 2004)).

¶**41**      On this record, we find no error in the superior court's factual findings and conclude it did not abuse its discretion in granting sole legal decision-making to Father, with limited and increasing parenting time to Mother upon compliance with the terms set forth in its order, and in finding the arrangement was in Child's best interest.

## CONCLUSION

¶**42**      We affirm the Arizona court's order regarding legal decision-making and parenting time. Both parties request an award of attorneys'

fees and costs on appeal, as well as travel and other expenses. Neither party is represented by counsel, and in our discretion, we decline this request. However, as the prevailing party, Father is entitled to reimbursement of his taxable costs upon compliance with ARCAP 21(a). *See* A.R.S. § 12-341.



Ruth A. Willingham · Clerk of the Court
FILED: ama