133 P.3d 752

**In re the Marriage of Anna L. GUERRA, Petitioner/Appellee,**

v.

**Joseph G. BEJARANO, Sr., Respondent/Appellant.**

**No. 1 CA–CV05–0407.**

Court of Appeals of Arizona, Division 1, Department B.

April 27, 2006.

Law Offices of Shelley Kays Hubbard by Shelley Kays Hubbard, Phoenix, Attorney for Appellee.

Thompson, Montgomery & DeRose by Jerry B. DeRose, Globe, Attorneys for Appellant.

## OPINION

TIMMER, Judge.

¶ 1 We are asked to decide whether the superior court is authorized to retroactively modify a child support order that concerns multiple children to the date on which one of the children emancipated when the modification is made in part to account for that event. For the reasons that follow, we hold that the court is not authorized to retroactively modify the order to alter the amount of arrearages accrued before notice of the petition to modify was given to the obligee parent. Moreover, while the court can modify an existing child support obligation to account for one child's emancipation, the earliest authorized effective date of the modification order is the filing date for the petition. Because the superior court in this case ruled accordingly, we affirm.

## BACKGROUND

¶ 2 Joseph Bejarano, Sr. ("Father") and Anna Guerra ("Mother") married and had two children: Joseph, born April 29, 1984, and Michael, born March 24, 1991. Father and Mother dissolved their marriage in 1998 pursuant to a consent decree, and the superior court ordered Father to pay $860 per month in child support, which increased to $1,021.75 per month in 2000. Neither the dissolution decree nor the subsequent modification order allocated the support obligation between the boys. Significantly, the decree provided as follows:

> Child support payments shall continue until terminated upon the child's emancipation, death, or majority, whichever occurs first, providing, however, that if a child who is to receive support payments as provided herein reaches the age of majority while said child is attending high school, child support shall continue to be provided

during the period which said child is actually attending high school.

¶ 3 Joseph emancipated in May 2002 when he graduated from high school at the age of eighteen. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 25–501(A), –503(M) (Supp.2005). Almost two years later, on March 31, 2004, Father filed a petition seeking modification of his child support obligation. As significant and continuing changes, Father alleged that his income had decreased, Joseph had emancipated, and Father had a new child to support. Father served Mother with the petition on August 4.

¶ 4 The court referred the matter to Expedited Services, a unit within the Family Support Center of the Maricopa County Clerk of the Superior Court. Ariz. Local R. Prac.Super. Ct. (Maricopa) 6.14. On November 18, a conference officer from Expedited Services recommended in a written report that Father's child support obligation be reduced to $333.82 per month. The officer noted that Father had asked that the modification be retroactive to June 1, 2002, the first month after Joseph became emancipated, but the officer recommended that the modified obligation take effect on September 1, 2004, the first day of the month following service of the petition on Mother. The conference officer also calculated Father's child support arrearages as $25,176.42 for the period February 1, 2000 through October 31, 2004 and recommended that on December 1, 2004 Father begin paying $200 per month toward the arrearages.

¶ 5 On November 26, 2004, the court approved Expedited Services' recommendation as an interim order unless either party objected. Father objected to the conference officer's calculation of arrearages because it failed to recognize that his obligation to support Joseph terminated June 1, 2002 as a matter of law. On April 12, 2005, after a hearing and further briefing by the parties, the court rejected Father's argument and adopted in full Expedited Services' recommendation, including its suggestion that the modified child support obligation be deemed effective on September 1, 2004. The court noted that "the child support obligation cannot be retroactively modified earlier than the date of filing of [Father's] Petition for Modification when there are remaining unemancipated children subject to a support order." This timely appeal followed.

### DISCUSSION

¶ 6 Father first argues that the superior court erred in its ruling because application of the Arizona Child Support Guidelines [1] ("Guidelines") is ministerial and would readily permit Expedited Services and the court to retroactively modify the child support award to the date of Joseph's emancipation. Mother responds that although the court is authorized to retroactively modify a child support award for good cause pursuant to A.R.S. § 25–327(A) (Supp.2005), that provision prohibits the court from selecting an effective date earlier than the date Father filed his petition for modification. Although we review the court's decision to modify the child support award for an abuse of discretion, *Little v. Little*, 193 Ariz. 518, 520, ¶ 5, 975 P.2d 108, 110 (1999), we review its interpretation of § 25–327(A) and the Guidelines de novo as questions of law. *Moretto v. Samaritan Health Sys.*, 198 Ariz. 192, 194, ¶ 11, 8 P.3d 380, 382 (App.2000); *Mead v. Holzmann*, 198 Ariz. 219, 220, ¶ 4, 8 P.3d 407, 408 (App.2000).

¶ 7 Section 25–327(A), which addresses dissolution decrees, provides, in relevant part, as follows:

> Except as otherwise provided in § 25–317, subsections F and G,[2] the provisions of any decree respecting maintenance or support may be modified or terminated only on a showing of changed circumstance

---

**1.** The Arizona Child Support Guidelines, adopted by the Arizona Supreme Court for actions filed after December 31, 2004, are found in the Appendix to A.R.S. § 25–320 (Supp.2005). Although a prior version of the Guidelines was in effect at the time Father filed his petition, *see* A.R.S. § 25–320, app. (Supp.2001), we cite the current version as the specific Guidelines at issue remain substantively unchanged.

**2.** These provisions address the effect of a separation agreement on the ability of parties to later modify the maintenance and support terms of a decree.

that are substantial and continuing except as to any amount that may have accrued as an arrearage before the date of notice of the motion or order to show cause to modify or terminate.... Modifications and terminations are effective on the first day of the month following notice of the petition for modification or termination unless the court, for good cause shown, orders the change to become effective at a different date but not earlier than the date of filing the petition for modification or termination.

*See also* A.R.S. § 25–503(E) (repeating provision in context of support order separate from decree). Thus, under the plain language of §§ 25–327(A) and –503(E), the court cannot modify a child support award to alter the amount of arrearages accrued before notice of the petition to modify is given to the other parent. *Lamb v. Superior Court,* 127 Ariz. 400, 402–03, 621 P.2d 906, 908–09 (1980). While the court can modify an existing child support obligation upon a showing of substantial and continuing change, the earliest authorized effective date of the modification order is the filing date of the petition for modification.

¶ 8 Father does not address the applicability of §§ 25–327(A) or –503(E). Nevertheless, he essentially argues that these provisions do not apply because Joseph's emancipation automatically terminated Father's duty to support him. Consequently, according to Father, retroactively applying the modification order to the date of Joseph's emancipation would not "modify" the prior support award, thereby violating §§ 25–327(A) and –503(E), but would merely recognize that the amount attributable to supporting Joseph had terminated.

¶ 9 To support his contention, Father relies primarily on this court's decision in *Guzman v. Guzman,* 175 Ariz. 183, 184, 854 P.2d 1169, 1170 (App.1993), which addressed the effect of a minor child's marriage on the father's obligation to pay child support until the child graduated from high school. When the father belatedly learned of the marriage, he filed a petition with the superior court asking it to both declare that the child's marriage had terminated the father's child

support obligation, and order the mother to return any excess child support. *Id.* at 185, 854 P.2d at 1171. The court agreed with the father and, after offsetting an amount for support arrearages, ordered the mother to return an amount to the father. *Id.*

¶ 10 On appeal, the mother argued that the superior court's order constituted a retroactive modification of the child support award in violation of A.R.S. § 25–327(A). *Id.* This court rejected that argument, holding that "the rule against retroactive modification of a child support order has no application to a situation in which a minor child has become emancipated through marriage." *Id.* The court reasoned that because our supreme court had held that a minor child's marriage automatically terminates the support obligation without any need to seek modification, *Crook v. Crook,* 80 Ariz. 275, 278, 296 P.2d 951, 953 (1956), and because parents are only obligated to support their unemancipated children, A.R.S. § 12–2451(A) (Supp.2005), the support obligation did not continue after the child's emancipation. *Guzman,* 175 Ariz. at 187, 854 P.2d at 1173; *see also State ex rel. Dep't of Econ. Sec. v. Demetz,* 2006 WL 771375 at *3, ¶ 13 (Ariz.App. Mar.28, 2006) ("Section 25–503(M) sets forth a limited number of events, including marriage, that automatically emancipate a child, thereby relieving parents from their support obligations.").

¶ 11 We agree with Mother that *Guzman* and *Crook* are distinguishable from this case because only one child was subject to the support orders involved in those cases. *Crook,* 80 Ariz. at 276, 296 P.2d at 951; *Guzman,* 175 Ariz. at 184, 854 P.2d at 1170. Thus, emancipation of those children terminated all support obligations. In this case, however, although Joseph's emancipation automatically terminated Father's duty to support him, it could not automatically terminate Father's support obligation because Michael remained unemancipated. And because the parties could not know the proper amount of support due for Michael absent the court's application of the Guidelines, Father was required to seek modification of the order in compliance with A.R.S. §§ 25–327(A) and –503(E).

¶ 12 Father also argues that because the Guidelines follow a standardized methodology designed to fairly and uniformly calculate an appropriate amount of a support obligation, the court's refusal to retroactively modify the support order as of the date of Joseph's emancipation contradicted the intent of the supreme court in promulgating the Guidelines. *See* Guidelines § 1 (providing that one purpose of Guidelines is to "make child support orders consistent for persons in similar circumstances"). Specifically, he argues that because the support obligation of a parent owed to a single child automatically terminates upon that child's emancipation, *see Guzman,* 175 Ariz. at 187, 854 P.2d at 1173, an appropriate application of the Guidelines in this case requires retroactive modification so that Father can realize a similarly timed adjustment.

¶ 13 We agree with Father that the superior court should consistently apply the Guidelines, unless circumstances meriting a deviation arise. *See* Guidelines § 20 (setting forth criteria for deviation). However, the Guidelines do not provide that the court should retroactively modify a child support order when accounting for the emancipation of one child among others benefitted by a support order. Indeed, Father neglects to recognize the existence of Guideline § 25, which directly addresses the situation at hand:

> If child support for more than one child was ordered under these guidelines and thereafter the duty to support one of the children stops, the order is not automatically reduced by that child's share. To obtain a modification to the child support order, a request must be made in writing to the court to recalculate the child support obligation pursuant to these guidelines. The procedure specified in Section 24 may be used for this purpose.

Section 24, in turn, states that any modification must be made pursuant to A.R.S. §§ 25–327 and –503 or by using a simplified proce-

dure. Thus, a consistent application of the Guidelines required the superior court to affirmatively modify Father's existing child support obligation rather than simply recognizing an automatic reduction. Because §§ 25–327(A) and –503(E) prohibit retroactive modification to a date earlier than the written modification request, the Guidelines necessarily prohibited the court from retroactively modifying the support order to the date of Joseph's emancipation.[3] Therefore, the court did not contravene the supreme court's intentions by failing to retroactively modify Father's child support obligation to the date of Joseph's emancipation; it advanced them.

¶ 14 Father finally contends that the superior court erred by refusing his request for a hearing to consider and apply equitable principles in deciding whether to retroactively modify the support order to the date of Joseph's emancipation. We disagree. First, Father asked for and received a hearing on his objection to the court's interim order. Prior to the hearing, the court ordered the parties to submit memoranda addressing the court's ability to retroactively modify the child support order to a date earlier than service of the petition for modification. Father does not explain, and the record does not reflect, how the court deprived Father of an opportunity to present his equitable arguments. Second, and more importantly, the court lacked authority to invoke equitable principles to contradict A.R.S. §§ 25–327(A) and –503(E). *Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, 532, ¶ 20, 19 P.3d 1241, 1248 (App.2001) ("When, as here, the legislature has clearly spoken by statute on a substantive matter within its domain, the courts will not interfere, under the guise of its equitable powers, with proper application of such statute."); *see also Guzman,* 175 Ariz. at 188, 854 P.2d at 1174 (holding court cannot use equitable power to order support when

---

**3.** The simplified procedure for modification neither references A.R.S. §§ 25–327 and –503 nor addresses retroactive modification. Guidelines § 24(B). Nevertheless, in light of the legislature's pronouncement on the subject, we cannot construe the Guidelines as permitting retroactive modification to a date prior to the written modi-

fication request if the obligor parent uses the simplified procedure. *In re Marriage of Worcester,* 192 Ariz. 24, 27, ¶ 9, 960 P.2d 624, 627 (1998) ("Where the legislature has spoken by statute, we will not construe our court rules, nor permit them to be utilized, so as to interfere with the proper application of those statutes.").

relevant statutes do not provide for it). We do not discern error.

¶ 15 In summary, we hold that although Father's obligation to support Joseph automatically terminated upon Joseph's emancipation, Father's support obligation did not automatically decrease in light of his continuing duty to support Michael. Rather, Father was required to make a written request to the court for modification of the order, thereby enabling the court to apply the Guidelines to determine Father's new support obligation. Because A.R.S. §§ 25–327(A) and – 503(E) prohibit retroactive modification of a support order to a date earlier than the date on which the written request for modification is filed, the court properly refused Father's request to retroactively modify the order to the date of Joseph's emancipation.[4]

## Attorneys' Fees on Appeal

¶ 16 Mother requests an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 25–324 (2000). She argues that Father's earnings exceed hers by approximately $1,000 per month and that Father has taken a position that is unreasonable and unsupported by Arizona law. In the exercise of our discretion, we decline Mother's request. However, as the prevailing party, she is entitled to an award of costs on appeal following submission of a statement of costs in accordance with Rule 21(a), Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶ 17 For the foregoing reasons, the superior court did not err by refusing Father's request to retroactively modify the child support order to the date of Joseph's emancipation. Accordingly, we affirm.

---

4. The dissolution decree states that child support payments shall continue until terminated by "the child's emancipation." *See supra* ¶ 2. Although Father does not cite this enigmatic language as a basis for relief, we note that an obligor parent bound by a support order involving multiple children and containing this language may become confused and incorrectly deduce that the obligation will automatically decrease upon the emancipation of one child. Perhaps to meet this

CONCURRING: G. MURRAY SNOW, Judge and JEFFERSON L. LANKFORD, Presiding Judge.

concern, in part, the supreme court's latest amendment to the Guidelines directs the superior court to "establish a presumptive date for the termination of the current child support *obligation*." Guidelines § 4 (emphasis added). Regardless, the superior court can avoid potential confusion by explicitly stating that the support obligation will not reduce upon the emancipation of one child absent a written request for modification.