NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ERICA NICOLE TILLMAN, *Petitioner/Appellant,*

*v.*

LYMAN MORRIS SMITH, *Respondent/Appellee.*

No. 1 CA-CV 24-0360 FC

FILED 08-07-2025

Appeal from the Superior Court in Maricopa County
No.  FC2015-091669
The Honorable Christopher Coury, Judge
The Honorable Adele Ponce, Judge
The Honorable Keith A. Miller, Judge

**AFFIRMED IN PART;**
**VACATED AND REMANDED IN PART WITH INSTRUCTIONS**

COUNSEL

Pangerl Law Firm, P.L.L.C., Phoenix
By Regina M. Pangerl
*Counsel for Petitioner/Appellant*

Austin R. Martineau Law, Mesa
By Austin R. Martineau
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Daniel J. Kiley joined.

---

**F U R U Y A**, Judge:

**¶1**		Erica Nicole Tillman ("Mother") appeals from the superior court's 2024 order modifying legal decision-making, parenting time, and child support. For the following reasons, we affirm in part and vacate and remand in part.

## FACTS AND PROCEDURAL HISTORY

**¶2**		Lyman Morris Smith ("Father") and Mother divorced in December 2015 after 9 years of marriage. At the time, both parties and their minor child ("Child") resided in Arizona. The court found Arizona to be Child's "home state" under Arizona Revised Statute ("A.R.S.") § 25-1031.

**¶3**		The parties' dissolution decree ("Decree") awarded Mother sole legal decision-making authority ("LDM") based on a history of domestic violence, *see* A.R.S. § 25-403.03, and Father's ongoing behavioral health struggles. The Decree provided that Child would reside primarily with Mother, awarding Father parenting time on a gradually increasing basis. The Decree provided Father a graduated parenting-time schedule under A.R.S. § 25-403.02(E), which he never fully exercised.

**¶4**		The Decree required Father to pay child support, communicate regarding Child's health matters, and prohibited parents from relocating Child more than 100 miles or out of Arizona without mutual consent or court approval. *See* A.R.S. § 25-408(A).

**¶5**		By 2018, Father had relocated to Maryland but occasionally returned to Arizona—specifically to his mother's home—to exercise parenting time. Meanwhile, Mother lived in Chandler with Child and her partner.

¶6        Over time, Father's visits to Arizona became increasingly sporadic, and he often provided minimal notice to Mother of his intent to exercise parenting time, causing significant schedule disruptions.

¶7        In March 2019, Mother filed a "Verified Petition to Modify Parenting Time and Child Support" ("March 2019 Petition"). She requested the court order Father to disclose his parenting time dates in advance, to modify the parenting plan accordingly, and to adjust child support if warranted. In response, Father requested a modification of parenting time to account for his relocation to Maryland but did not initially request a modification of LDM.

¶8        In June 2019, Father filed a dual-captioned document that both requested temporary orders and modification of LDM to be joint. In his request, Father alleged Mother had committed domestic violence against him in the presence of Child. At a July 2019 hearing regarding temporary orders, Mother described an escalating pattern of conflict, including a domestic incident by Father involving her partner. Later that month, the court entered temporary orders awarding the parties joint LDM and establishing a new parenting plan in light of Father's relocation to Maryland.

¶9        Child was later diagnosed with ADHD, dysgraphia, and developmental coordination disorder. After receiving the diagnosis, Mother coordinated a neuropsychological evaluation and sought to obtain school accommodations for Child. Father refused to participate in the evaluation or complete the required paperwork and effectively delayed Child from receiving special education services for more than a year. In February 2022, Mother filed an emergency motion for temporary orders requesting sole LDM to resolve these impasses. After a hearing in May 2022, the court denied the motion and maintained the joint LDM provision of the July 2019 temporary orders.

¶10       Resolution of Mother's March 2019 Petition was delayed for a variety of reasons. As relevant here, by mid-2022 Mother notified the court that she was relocating to California for graduate school and was taking Child with her. Father, who became aware of the relocation when his counsel received a copy of the notification, objected to the move and contacted law enforcement, though the record does not reflect any action taken.

¶11            In September 2022, Mother asked the court to relinquish jurisdiction because neither parent nor Child resided in Arizona. *See* A.R.S. §§ 25-1032(A), -1037. The court, in a minute entry entered later in September, stated it would treat Mother's filing as a motion to dismiss. At a November 2022 hearing, Wife conceded that Arizona courts had continuing exclusive jurisdiction. She nonetheless indicated her intent to initiate proceedings in California, and asked the court to make a finding under Section 25-1037 that Arizona is an inconvenient forum because none of the relevant parties continued to reside here. However, the court declined to dismiss the matter, expressly refusing to relinquish jurisdiction. The court reasoned that holding a trial to enter final orders served Child's best interests, would bring closure to an unduly drawn-out custody dispute, and would prevent Mother from severing Father's relationship with Child.

¶12            In April 2023, Mother asked the court to hold a conference under Arizona's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), A.R.S. §§ 25-1001. The court scheduled such a conference for May 2023. However, the California judicial officer was unavailable at that time, and the conference was never rescheduled.

¶13            After the case was administratively reassigned due to extended time between proceedings, Mother requested that the Arizona court determine whether the parties resided in Arizona and delay proceedings until the UCCJEA issue was resolved. In September 2023, those motions were denied.

¶14            In February 2024, the court held the final trial on Mother's March 2019 Petition. At this time, the court found that Father's primary residence was Maryland and Mother's primary residence was California, but also found the evidence introduced at trial was insufficient to find that Father's domicile was Maryland. It determined that because "Arizona was the child's home state on the date that the current petition was filed [March 2019], and the most recent legal decision-making and parenting time determinations with respect to the child were made by an Arizona court, [the Arizona superior court] has continuing jurisdiction over legal decision-making and parenting time determinations."

**¶15** The court entered a final order in April 2024, making permanent the joint LDM established in the temporary orders, establishing a modified parenting time plan, and eliminating child support.

**¶16** Mother timely filed a notice of appeal, and we have jurisdiction under A.R.S. §§ 12-2101(A)(1), (2).

## DISCUSSION

**¶17** Mother challenges the superior court's exercise of exclusive continuing jurisdiction, denial of her motion to dismiss, refusal to conduct a UCCJEA conference at her request, and ruling modifying LDM, parenting time, and child support. We review each argument in turn.

## I. The Superior Court Had Exclusive Continuing Jurisdiction Over Mother's Petition to Modify the Decree.

**¶18** As with all legal issues, we review a court's jurisdictional authority de novo, and "to the extent a court's jurisdictional determination rests on disputed facts, we accept the court's findings if reasonable evidence and inferences support them." *Arturo D. v. Dep't of Child Safety*, 249 Ariz. 20, 23 ¶ 9 (App. 2020) (citation modified).

**¶19** Under Arizona's version of the UCCJEA, a court of this state has exclusive continuing jurisdiction over a child custody determination it has made until either:

> (1) the same court determines that neither the child, nor the child and a parent, nor the child and a person acting as a parent have significant connection with Arizona and that substantial evidence is no longer available here concerning the child's care, protection, training and personal relationships; or

> (2) the same court or a court of another state determines that the child and all parents do not presently reside in this state.

A.R.S. § 25-1032(A).

**¶20** Here, it is undisputed Arizona had exclusive continuing jurisdiction under A.R.S. § 25-1031 at the time Mother filed her 2019 petition to modify because, although Father had moved to Maryland, she and Child were still Arizona residents. *See Greenbank v. Vanzant,* 250 Ariz. 644, 649 ¶ 22 (App. 2021). But Mother now argues the court lost exclusive continuing jurisdiction once she and Child moved to California, even though her own petition to modify was still pending. Mother's argument misreads the UCCJEA.

**¶21** "In interpreting statutes . . ., we look first to the text itself, applying common and ordinary meanings." *Barriga v. Dep't of Econ. Sec.*, 256 Ariz. 543, 547 ¶ 13 (2024). The statute's use of the verb "determines" is controlling. It indicates that, contrary to Mother's argument, the court does not automatically lose jurisdiction when all parties move to another state. *See Greenbank,* 250 Ariz. at 649 ¶ 22. Rather, under the statute's express language, it retains jurisdiction until it—or a court in another state—makes determinations sufficient to fulfill at least one of the conditions specified in A.R.S. § 25-1032(A). In other words, affirmative court action is necessary to divest a court of jurisdiction under the UCCJEA. *Id.*

**¶22** No such court action divesting Arizona of jurisdiction occurred in this case. Moreover, the court declined Mother's requests to hold a UCCJEA conference with California courts to cede jurisdiction. The court also did not make the determination that all concerned parties had moved out of Arizona, a prerequisite to loss of exclusive continuing jurisdiction under A.R.S. § 25-1032(A). Instead, the court expressly chose to retain and exercise continuing jurisdiction over this case through trial and entry of modifications to the Decree. Only within its final modification order—entered after the evidentiary hearing on Mother's petition to modify—did the court make the determination that all parties now primarily reside outside Arizona, clearing a path for a court in another jurisdiction to accept jurisdiction.

## II. The Superior Court Did Not Err in Denying Mother's Motion to Dismiss.

**¶23** Noting that her petition to modify asked the court to "[o]rder Father to provide his 2019 parenting time dates and to modify parenting time accordingly," Mother asserts that her requested relief became moot after 2019 had passed. Accordingly, she argues, the court erred by failing to dismiss her petition as moot.

**¶24**      We review the court's refusal to dismiss Mother's petition to modify for an abuse of discretion. *See* Ariz. R. Fam. Law P. 46(A); *Sundstrom v. Flatt,* 244 Ariz. 136, 137 ¶ 4 n. 2 (App. 2017).

**¶25**      Mother's 2019 petition does not, by its terms, mandate a conclusion that it was limited to parenting time in "2019-only." Moreover, Mother did not raise her "2019-only" argument for dismissal until years after she filed her petition in March 2019, after extensive litigation of that petition had already occurred. To the extent that she continued litigation for years ,after 2019 had come and gone, her conduct constitutes waiver of her argument. *Cf. City of Phoenix v. Fields*, 219 Ariz. 568, 574 ¶ 29 (2009) ("Even when a party preserves an affirmative defense in an answer or a Rule 12(b) motion, . . . it may waive that defense by its subsequent conduct in the litigation.").

### III.     The Superior Court Did Not Err by Refusing to Conduct a UCCJEA Conference or Evidentiary Hearing on Jurisdiction.

**¶26**      Mother further contends that the court erred by refusing her requests to reschedule a UCCJEA conference before issuing final orders. Specifically, she argues the Arizona court was required to confer with the California court when she domesticated orders in California after she moved there with Child. She also argues the court erred in refusing to hold a hearing to take evidence about Child's significant connections to Arizona, or lack thereof.

**¶27**      "This court reviews a decision on whether to hold an evidentiary hearing for an abuse of discretion." *Murray v. Murray*, No. 1 CA-CV 22-0678 FC, 2023 WL 8281710, at *3 ¶ 17 (Ariz. App. Nov. 30, 2023) (mem. decision) (citing *State v. Wassenaar*, 215 Ariz. 565, 576 ¶ 48 (App. 2007)). Here, the court was under no obligation to either conduct a UCCJEA conference or to hold an evidentiary hearing on its jurisdiction. Under A.R.S. § 25-1036(B), a UCCJEA conference is only mandated when custody proceedings are simultaneously pending in another state. The record reflects that no such concurrent proceedings existed here. Arizona issued the Decree in 2015 containing custody determinations and no other state had assumed jurisdiction over the Decree or Child. Where no concurrent proceeding existed, the superior court would not have a California court with which to confer until Mother initiated proceedings there. *See Sha'quia G. v. Dep't of Child Safety,* 251 Ariz. 212, 215 ¶ 14 (App. 2021).

¶28 The court did not err in refusing to hold a UCCJEA conference or an evidentiary hearing on its jurisdiction because neither party disputed Mother and Child's residence in Arizona at the time jurisdiction attached to Mother's 2019 petition for modification and no concurrent proceeding regarding Child was pending in another state. *See* A.R.S. § 25-1036(B) (the court is required to communicate with the court of another state *only when* a proceeding has commenced in that other state). And Mother's mere domestication of the Arizona orders in California—years later and while her Arizona petition remained pending—did not necessitate a UCCJEA conference or hearing. The court's actions were not error. Therefore, we affirm the court's exercise of its own exclusive continuing jurisdiction in this case and discern no abuse of discretion in its decisions to deny Mother's requests for a UCCJEA conference and an evidentiary hearing on jurisdiction.

## IV. The Superior Court Did Not Err by Modifying LDM.

### A. The court had authority to resolve Father's request to modify LDM.

¶29 Mother contends that the court erred in modifying LDM because Father did not file a document captioned as a petition to modify pursuant to A.R.S. § 25-411 and her own March 2019 petition did not request modification of LDM. She claims that because neither party filed a "petition" seeking that relief, that issue was never validly joined and the court lacked authority to modify the original LDM orders. Not so.

¶30 We review the court's orders regarding LDM for an abuse of discretion. *Gish v. Greyson*, 253 Ariz. 437, 444 ¶ 31 (App. 2022). The court's primary consideration in awarding LDM and parenting time is the best interests of the child. *Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18 (2003). As a matter of public policy, the court considers that, absent evidence to the contrary, "it is in a child's best interest: (1) To have substantial, frequent, and continuing parenting time with both parents[; and] (2) To have both parents participate in decision-making about the child." A.R.S. § 25-103(B).

¶31 A request to modify LDM may be made by motion or petition and is to include sworn facts warranting the requested modification. A.R.S. § 25-411(L). Any alleged errors in compliance with A.R.S. § 25-411 procedures must be addressed prior to a resolution on the merits, or we deem them waived. *In re the Marriage of Dorman*, 198 Ariz. 298, 302 ¶ 11 (App. 2000). And we will not reverse on appeal for alleged noncompliance

with A.R.S. § 25-411 without a showing of prejudice. *Sundstrom,* 244 Ariz. at 138 ¶ 8.

¶32 Here, Father raised the issue of modifying LDM when, in June 2019, he filed a verified motion for temporary orders that included a request to modify LDM ("Father's motion"). Though not captioned as a "petition," the verified filing of this cross-motion satisfied the statutory requirements for a petition, and the court did not err in treating it as such. *See* A.R.S. § 25-411(A) ("A *motion* or petition to modify an order shall meet the requirements of this section." (emphasis added)). Father's motion notified Mother about his requested modification of LDM and included the sworn facts necessary to satisfy the requirements of A.R.S. § 25-411. The superior court could properly conclude that Father's motion validly joined the issue of LDM under the statute.

¶33 Even assuming Father's motion for temporary orders had not complied with A.R.S. § 25-411, Mother did not object to the court's entertaining modification of LDM until years after the court issued temporary orders changing LDM under the Decree. Her first objection to the court's authority to modify LDM came in 2023, after four years of accepting, and even requesting, the court's authority over LDM. Her delay constitutes waiver. *Dorman,* 198 Ariz. at 302 ¶ 11. Nor does our review of this record reveal any cognizable prejudice to Mother's position during the proceedings under Father's motion. *Sundstrom,* 244 Ariz. at 138 ¶ 8.

¶34 In sum, the court was authorized to hear and resolve the LDM issue, and it did not err by doing so.

### B. The court's modification was supported by evidence and the law.

¶35 The court will not award joint LDM if it finds significant domestic violence existed pursuant to A.R.S. § 13-3601. A.R.S. § 25-403.03(A). "If the court determines that a parent who is seeking sole or joint legal decision-making has committed an act of domestic violence against the other parent, there is a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act of domestic violence is contrary to the child's best interests." A.R.S. § 25-403.03(D). When reviewing such findings on appeal, we will not reweigh the evidence and, instead, defer to the court's findings of fact when not clearly erroneous. *Hurd v. Hurd,* 223 Ariz. 48, 52 ¶ 16 (App. 2009).

¶36 Mother argues the court's LDM modification was not supported by the evidence and its orders are contrary to law because, she maintains, the court established in its original Decree that husband had a significant history of domestic violence. She argues this finding precluded Father from seeking modification of LDM. Mother misconstrues the court's Decree and its effect on Father's request.

¶37 In the Decree, the court found that some of the evidence *could* establish a significant history of domestic violence. But it did not make any definitive finding to that effect. Instead, the court applied the A.R.S. § 25-403.03 presumption and found that Father had not overcome it. As we have explained, the A.R.S. § 25-403.03(D) presumption analysis can only be applied when the court does not find a significant history of domestic violence by one party. *In re the Marriage of Morris,* 255 Ariz. 158, 162 ¶ 15–16 (App. 2023). The court's engaging in Section 25-403.03(D) analysis implies that the original Decree did not bar Father from seeking future joint LDM under A.R.S. § 25-403.03(A).

¶38 Regarding the court's modification awarding the parties joint LDM, Mother argues the decision was in error because Father did not overcome the presumption, as it was applied in the original Decree. But the presumption does not apply if both parents have committed an act of domestic violence. A.R.S. § 25-403.03(D). Later in the proceedings—after hearing substantial evidence on the issue—the court found mutual domestic violence between Mother and Father had occurred, rendering the presumption against joint LDM inapplicable. The statute and the record support this finding. *Id.*

¶39 Because Mother has shown no error, the court's LDM orders are affirmed.

## V. Child Support Award

¶40 We review child support awards for an abuse of discretion. *Engel v. Landman,* 221 Ariz. 504, 510 ¶ 21 (App. 2009). We view the record in the light most favorable to the court's decision and only find an abuse of discretion when the record is entirely devoid of evidence to support it. *Milinovich v. Womack,* 236 Ariz. 612, 615 ¶ 7 (App. 2015). We review de novo the court's conclusions of law and interpretations of the Arizona Child Support Guidelines. *See* A.R.S. § 25-320, appx. ("Guidelines"); *Sherman v. Sherman,* 241 Ariz. 110, 113 ¶ 9 (App. 2016). In reading the Guidelines, we view the "plain language as the most reliable indicator of the supreme court's intent." *Milinovich,* 236 Ariz. at 615 ¶ 10. Our review of the

Guidelines is consistent with the purpose of the document as a whole — to establish a consistent standard of child support awards among similar circumstances before the court. *Sherman,* 241 Ariz. at 113 ¶ 9–10; *Cummings v. Cummings,* 182 Ariz. 383, 385 (App. 1994).

**¶41** The Guidelines consider the income of both parents to approximate the amount they would have spent on the children if the parents and children were all living together. Guidelines § (I)(A). The Guidelines allow a court to attribute hypothetical income and expenses to parents who may be under- or unemployed due to their own choices. *Engel,* 221 Ariz. at 511 ¶¶ 21–24. Child support modification requests require the parent seeking modification to show a substantial and continuing change in circumstances. Guidelines § XIV(A).

### A.   "Retroactive" Modification of Father's Child Support Obligation

**¶42** "Modifications and terminations are effective on the first day of the month following notice of the petition for modification or termination unless the court, for good cause shown, orders the change to become effective at a different date but not earlier than the date of filing the petition for modification or termination." A.R.S. §§ 25-327(A), -503(E). The court may only modify a child support award *after* notice of the petition to modify is given to the other parent. *Guerra v. Bejarano,* 212 Ariz. 442, 443–446 ¶¶, 6–15 (App. 2006).

**¶43** Mother argues the court abused its discretion when modifying Father's child support in its final orders to retroactively cover the time since she filed the petition to modify. She filed her petition to modify at the end of March 2019 and the court modified child support in July 2019, retroactive to April 1, 2019, the month after Mother's request for modification was filed. The court correctly applied the statute's requirement to apply the change in child support retroactively to the month following filing of Mother's petition to modify. Thus, we reject Mother's argument to the contrary.

### B.   Father's Imputed Wages to Calculate Child Support Obligation

**¶44** "The court shall presume, in the absence of contrary testimony, that a parent is capable of full-time employment at least at the applicable state or federal adult minimum wage, whichever is higher." A.R.S. § 25-320(N). The court generally presumes full-time employment to be 40 hours a week. Guidelines § II(A)(4)(b). "If the court attributes income

for purposes of calculating child support, the Child Support Worksheet and the court order must state that all or a portion of the income is attributed." *Id.* at (c).

**¶45**       Any child support order different from those determined by the Guidelines are a deviation. *Id.* § (IX)(A). Before deviating, the court must consider the child's best interests and find that a strict application of the Guidelines would be inappropriate or unjust. *Id.* § (I)(A). Section IX of the Guidelines lists the criteria allowing or mandating the court to make a deviation.

**¶46**       Here, though neither parent made the Arizona adult minimum wage, Mother was attributed that income, while Father was attributed a lesser amount. Mother was a full-time college student throughout the proceedings and did not earn a wage. Father was working in an apprenticeship-like program earning less than Arizona minimum wage. At the time of the final orders, both parents were similarly situated. The court itself found "no substantial disparity of financial resources between the parties." Nonetheless, the court attributed income of $2,600 per month to Mother and only $1,200 per month to Father, with no explanation for that disparity.

**¶47**       While a trial court has discretion to deviate from the Guidelines if strict application would be "inappropriate or unjust," that discretion is limited. Guidelines § IX(B)(1). A deviation requires express findings addressing the deviation, the amount of child support before and after the deviation, and why the deviation serves the best interests of the child. Guidelines § IX(B); *see Patterson v. Patterson*, 226 Ariz. 356, 358 ¶ 5 (App. 2011). The court provided no such findings. The court's worksheet reflects a final support obligation of $0 for Father due to the Self Support Reserve Test, but this outcome does not cure the underlying defect: the disparate income attribution itself lacked evidentiary findings and legal justification. *See Engel*, 221 Ariz. at 512 ¶ 28 n.6 ("Where circumstances require, deviation from the support prescribed by the Guidelines may be accomplished pursuant to § 20, not through the fiction of attribution.").

**¶48**       Without any specific findings to explain this discrepancy, we cannot, without speculating, discern the court's rationale in attributing the parents' different wages. Thus, we vacate the child support modification and remand for the court to recompute, with instructions to enter specific findings justifying any discrepancy in Father's and Mother's attributed income.

¶49 The court also found neither parent had the ability to obtain health insurance at the time of the final orders and ordered the parents to split the uninsured/unreimbursed health insurance expenses for Child. A.R.S. §§ 25-320(J), (K)(3). The final child support order, however, attributed 80% of those expenses to Mother and 20% to Father. The court made no findings or determinations to account for the disparate treatment. Therefore, we also vacate this order and remand with instructions for the court to recompute and make specific findings to support its determination on this issue.

## VI.    A.R.S. § 25-408

¶50 Mother appeals the court's order preventing her from relocating Child outside Arizona or more than 100 miles from his current home within California. State law allows courts to restrict a parent from moving their child except when one parent already resides outside the state. A.R.S. § 25-408(A). Both parties agree the language in the order requiring compliance with A.R.S. § 25-408(A) should be removed from the court's final orders because Father does not live in the same state as Child. We agree. Therefore, we vacate this portion of the court's order modifying the Decree.

## VII.   Attorneys' Fees

¶51 If there is a disparity in financial resources and/or if a party takes unreasonable positions, the court may order that party to pay reasonable attorneys' fees. A.R.S. § 25-324. We review denial of a request for award of attorneys' fees for an abuse of discretion. *Tanner v. Marwil,* 250 Ariz. 43, 47 ¶ 16 (App. 2020). We view the record in the light most favorable to upholding the court's ruling and only find an abuse of discretion when the record is devoid of any evidence to support its ruling. *Id.*

¶52 Here, after it considered both parties' financial resources and the reasonableness of their positions, the court declined to award fees to either party. As discussed above, the record reflects no financial disparity in the parties' financial resources. Moreover, the court specifically found that both parties had acted unreasonably during the litigation and the record supports that finding. Given the record supports the court's denial, Mother has shown no abuse of discretion.

¶53        Both parties request attorneys' fees and costs incurred in this appeal. In our discretion, and after considering the evidence regarding their financial resources and the reasonableness of their positions, we decline to award fees to either party. However, as the prevailing party, Mother is awarded her costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶54        For the foregoing reasons, we vacate the court's child support modification. On remand, we direct the court to enter child support orders based upon application of the Guidelines and instruct the court to enter appropriate factual findings to expressly support any disparate attribution of income between Mother and Father and any deviations from calculations of child support under the Guidelines. We further vacate the court's allocation of the uninsured/unreimbursed health insurance expenses for Child and instruct the court, upon its reconsideration of this issue, to enter appropriate factual findings to support its distribution. Finally, we vacate the court's order pursuant to A.R.S. § 25-408.

¶55        We affirm the court's orders in all other respects.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR