NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

KATY LYNNE PORTER, *Petitioner/Appellee,*

*v.*

NATHAN RAY PORTER, *Respondent/Appellant.*

No. 1 CA-CV 25-0287 FC

FILED 02-20-2026

Appeal from the Superior Court in Maricopa County
No.  FC2023-003057
The Honorable Michelle Carson, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Montoya Lucero & Paster, PA, Phoenix
By Tiffani E. Lucero
*Co-Counsel for Petitioner/Appellee*

Rubin & Ansel, PLLC, Scottsdale
By Yvette D. Ansel
*Co-Counsel for Petitioner/Appellee*

Davis Miles, PLLC, Tempe
By Spencer T. Schiefer
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Nathan Ray Porter ("Father") appeals the decree dissolving his marriage to Katy Lynne Porter ("Mother"). Father challenges the orders denying retroactive modification of his temporary child support and spousal maintenance obligations, the orders for final support and maintenance awards, and several orders related to the parties' property and debts. We vacate and remand for the court to recalculate the retroactive temporary support award based on a child's emancipation during the pendency of the proceedings, and for the court to revisit responsibility for the minor children's medical insurance. Regarding the decree's division of property and debts, we remand for recalculation of a reimbursement award and vacate a sanctions order. We otherwise affirm the decree.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Father were married for about twenty years, during which time they had three children and acquired extensive property, including Father's dental practice and multiple real properties. In mid-2023, Mother petitioned for dissolution.

¶3        In October 2023, by the parties' agreement, a third party purchased 51% of the dental practice and Father retained a 49% interest. A few weeks later, the superior court entered temporary orders requiring Father to make monthly payments of $3,581 for child support and $8,248 for spousal maintenance. To calculate those obligations, the court found that Father's annual income was $580,000.

¶4        In early 2024, Father ousted Mother from the community residence and she moved into a community rental property (the "Manor Court Property") held by Father's self-directed individual retirement account. Father's expert opined that Mother's occupation of the property caused the retirement account's assets to be "deemed distributed as an early withdrawal" under federal law, making Father responsible for taxes on the distribution plus a penalty.

¶5        A few months after Mother moved into the Manor Court Property, the parties' oldest child graduated high school at age eighteen. Father did not, however, request modification of his temporary child support obligation until his December 2024 pretrial statement, when he requested retroactive modification based not only on the child's emancipation but also on the court's purported overestimate of his income.

¶6        The court held a dissolution trial in December 2024 and entered a dissolution decree in February 2025.  The court denied Father's retroactive modification requests and entered final orders requiring him to pay $2,995 in monthly child support for the minor children and $7,500 in monthly spousal maintenance for four years.  In calculating the prospective orders, the court attributed Father annual income of $580,000, plus $36,000 in additional investment return.  For the child support calculation, the court credited Mother for the cost of the minor children's medical insurance, in accord with its order assigning her that obligation.

¶7        In dividing the parties' property, the court accepted their multiple agreements under Arizona Rule of Family Law Procedure ("Rule") 69, including their agreements to sell the dental practice and all their property holdings except one short-term rental (the "Lakeside Property").  The court held that the remaining community property should be divided equally, and that the parties identified no community debts for allocation.

¶8        Consistent with an equal division of community property, the court ordered the Lakeside Property sold and the equity split.  But the court accepted Mother's claim that she separately paid some of the Lakeside Property's operating expenses during the pendency of the dissolution proceedings and therefore ordered Father to reimburse her $3,993 as half those expenses.  The court denied Mother's request to be reimbursed expenses for the Manor Court Property, however, "[d]ue to the negative tax consequence incurred by the parties and no rental expense incurred by Mother."  The court found that Mother caused the negative tax consequence but acted in good faith, and assigned financial responsibility to Father by ordering the parties to file separate tax returns for the 2024 tax year and beyond.  The court further ordered that Father would be responsible for Mother's tax "fines, fees, [and] penalties for 2023" if he did not provide her with a relevant tax form for the dental practice "by December 31, 2024."

¶9        Father timely appealed the dissolution decree.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).

3

**DISCUSSION**

¶10        Father makes multiple arguments on appeal.  We address each argument in turn.

    I.        Child Support and Spousal Maintenance

¶11        Father raises several challenges to the superior court's refusal to retroactively modify the temporary child support and spousal maintenance awards, as well as its imposition of the final awards.  We review child support and spousal maintenance determinations for abuse of discretion. *In re Marriage of Berger*, 140 Ariz. 156, 167 (App. 1983).  The court abuses its discretion only when the record, viewed most favorably to affirming, is "'devoid of competent evidence to support' the decision." *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (citation omitted).  We defer to the superior court's credibility determinations, and we do not reweigh the evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).  Where no party timely requests written findings under Rule 82, we presume the court found every fact necessary to support its decision, *Whitt v. Meza*, 257 Ariz. 176, 180, ¶¶ 7-8 (App. 2024), inferring supportive findings of fact where reasonably supported by the evidence and not in conflict with express findings, *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984).  We interpret de novo the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("Support Guidelines"), and the Arizona Spousal Maintenance Guidelines, A.R.S. § 25-319 app. ("Maintenance Guidelines"), which prescribe the usual manner for calculating reasonable and necessary support and maintenance. *See Nia v. Nia*, 242 Ariz. 419, 422, 424, ¶¶ 7, 18-20 (App. 2017); Support Guidelines § IX; Maintenance Guidelines § V.

    A. The superior court did not abuse its discretion by attributing $580,000 as Father's income.

¶12        Father first contends the evidence did not justify the superior court's valuation of his income in both the temporary and the final support and maintenance orders.  We disagree.

¶13        The superior court applied the Support Guidelines and the Maintenance Guidelines without deviation and stated in its final orders it was attributing Father income in the same amount found for the temporary orders: $580,000 (plus, for the final orders, unchallenged investment returns).  The Support Guidelines provide that the court may attribute unearned income to a parent after considering multiple factors, including the children's best interests, the parent's historical earnings, and the reasons for underemployment.  Support Guidelines § II(A)(4)(a), (d), (e).  The

Maintenance Guidelines similarly provide that the court may attribute income after balancing factors, including earning history and the reasons for underemployment. Maintenance Guidelines § III(B)(2)(c), (f).

**¶14** Mother specifically asked that the court look to Father's historical earnings to determine his income. She argues that income attribution was appropriate because Father deliberately worked less during the pendency of the dissolution to keep his performance below the level that would require the third-party buyer to pay him funds held back from the closing payment for the sale of the dental practice. Evidence that Father voluntarily reduced his work hours could justify attributing him income. *See* Support Guidelines § II(A)(4)(d), (e)(iii); Maintenance Guidelines § III(B)(2)(f). Moreover, the court also could attribute him income based on his reduced earning potential due to the sale of the dental practice — even assuming that the sale was a reasonable decision. *See* Support Guidelines § II(A)(4)(e)(ii) (providing, for child support income attribution, that if a parent is voluntarily underemployed with reasonable cause, the court should consider "whether the parent's decision and its benefits outweigh the effect that the reduced income has on the child's best interests"); Maintenance Guidelines § III(B)(2)(f)(ii) (providing, for spousal maintenance income attribution, that if a spouse is voluntarily underemployed with reasonable cause, the court should consider "whether the party's decision and its benefits outweigh the impact of the reduced income on the party's ability to become self-sufficient or pay spousal maintenance"). And although Mother's agreement to the sale was a relevant consideration, it did not preclude the court from attributing Father income under the factor-based analyses. *See* Child Support Guideline § II(A)(4)(e)(ii); Maintenance Guideline § III(B)(2)(f)(iii) (specifically identifying as a relevant factor whether both spouses agreed to the income-reducing conduct).

**¶15** On this record, we cannot say the superior court abused its discretion by attributing Father income of $580,000 and refusing to adjust that amount when calculating retroactive child support. The attributed amount was not unreasonable, as it was consistent with Mother's testimony that historically, the parties not only "were collecting at least 500 to 600 grand a year," but also were using the dental practice to pay "close to $60,000 in . . . personal expenses," put "about 120 to 140,000 extra in retirement accounts," and "pay[] [their] kids through the practice." And because the court relied on the attribution of income, it was not constrained by the evidence of Father's actual earnings after selling the dental practice. For the same reason, Father's contention that the court improperly double-counted actual income (specifically, the value of his retained business

interest and his later profit distributions), *see* Maintenance Guideline
§ III(C)(3)(a), is misplaced.

**¶16** We note, however, that the attributed amount was not an extreme deviation from the evidence of Father's actual post-sale earnings. To be sure, Father's evidence showed that in 2024 he earned only about $222,000 in wages and $103,000 in profit distributions as of November (values not drastically different from the third-party buyer's projections). But Mother testified Father continued to live extravagantly.[1] Moreover, Father testified he had sold an additional 24.5% of his interest in the practice—a transaction contemplated by the third-party buyer's initial projections as part of a staggered "likely path to full liquidity."[2] The court therefore properly found that Father had income through his "retention of part of his dental practice, and other things tied to the sale of his dental practice," and was "slated to receive another significant payout for the sale of the dental practice in the future."

**¶17** On this record, the superior court acted within its discretion in setting Father's income for purposes of prospective child support and spousal maintenance, and in denying Father's motion to retroactively modify the temporary orders based on the same value.

B. The superior court abused its discretion by denying a retroactive modification of the temporary child support award based upon a child's emancipation.

**¶18** Father next contends the superior court erred by denying retroactive modification of the temporary child support order in view of the oldest child's eighteenth birthday and subsequent high school graduation. We agree.

**¶19** Except in circumstances not applicable here, a child support award cannot continue past a child's eighteenth birthday and high school

---

[1] Mother also pointed to a bank statement to claim that Father was continuing to run personal expenses through the dental practice. But that statement showed only that he paid expenses from an account in which he deposited his wages and distributions.

[2] We note, however, that the balance of the projected transactions remained hypothetical and could not support Mother's repeated assertion that Father would receive an additional $1 million over time. *See Brevick v. Brevick*, 129 Ariz. 51, 54 (App. 1981).

graduation. A.R.S. §§ 25-320(E), -503(Q)(2). But where the child support obligation remains for other children, the court must affirmatively modify the order to account for the emancipation. *Guerra v. Bejarano*, 212 Ariz. 442, 445, ¶ 13 (App. 2006). In the case of a final order, the court is statutorily limited to ordering retroactive modification only so far back as the written modification request. *Id.* But there is no such limitation with respect to a temporary order. *Maximov v. Maximov*, 220 Ariz. 299, 301, ¶ 7 (App. 2009). In that circumstance, the court may order retroactive modification as justice requires. *Id.*

¶20 Where, as here, a child has undisputedly emancipated during the pendency of a temporary order, the court has no discretion but to grant a motion to modify the obligation retroactive to the emancipation event. Indeed, Mother obliquely concedes the same, stating that counsel "can work together to remove [the emancipated child] from the temporary orders child support worksheet from June, 2024" (the month after her graduation) as part of compliance with the court's order that counsel determine the balance of Father's temporary support arrearages. We reject Mother's proposed solution for the error because Father is entitled to an enforceable order recognizing that his obligation diminished when one of the children emancipated. As such, we vacate the order denying modification insofar as it related to the emancipation and remand for entry of an appropriate order. Whether the order is styled as a change to the obligation or as a change to arrearages is within the superior court's discretion.

    C. The superior court abused its discretion by assigning responsibility and credit for the children's medical insurance without evidentiary support.

¶21 Father next contends the superior court erred by crediting Mother for paying the minor children's medical insurance in the final child support calculation. We agree.

¶22 Support Guideline § III(B)(3)(c) provides that "[u]nless otherwise agreed, if medical insurance of comparable benefits and cost is available to both parents, the order assigns responsibility to the parent who has the greater amount of parenting time." As Father concedes, the court may reject the parties' agreements—and so the superior court was not bound by Mother's testimony acquiescing to Father continuing to pay for the insurance. *See Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990) (holding that the court is not bound to adopt parties' proposed findings if inconsistent with the court's independent assessment of the facts). But

although the court could consider its award or primary parenting time to Mother as a factor in assigning the obligation, it also had to consider Mother's cost to obtain comparable insurance. *See* Support Guideline § III(B)(3)(c). And the parties presented no evidence on that cost. Instead, the court simply adopted for Mother (who was struggling to find full-time work after a long absence from the workforce) the same cost that Father (a working dentist) claimed in his pretrial statement to be paying for the minor children: $245. And even that amount did not match Father's testimony that his lump-sum cost for insuring the minors and two adults was $177 (plus $7 for dental and vision coverage).

**¶23**        On this record, insufficient evidence supports the superior court's order assigning the insurance obligation to Mother and its recognition of the credit in the child support calculation. We vacate the order assigning the obligation and remand for the court to determine an assignment based on evidence or an accepted agreement. The decision may necessitate modification of the support obligation.

II.     Property and Debts

**¶24**        Father raises several challenges to orders related to the parties' property and debts. We review de novo the superior court's characterization of property as separate or community. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We review the allocation of property for abuse of discretion, viewing the evidence in the light most favorable to affirming the court's order. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). We defer to the court's credibility determinations. *Gutierrez*, 193 Ariz. at 347-48, ¶ 13.

   A. The superior court properly ordered reimbursement for the Lakeside Property's operating expenses, but it miscalculated the amount.

**¶25**        Father contends the superior court erred by ordering him to reimburse Mother for half of the expenses she separately paid to continue operating the Lakeside Property as a short-term rental during the dissolution proceedings. Although reimbursement was justified, the amount ordered was inconsistent with the evidence.

**¶26**        Because the marital community terminates upon service of a dissolution petition that results in a decree, a spouse's post-petition expenditures of separate funds to maintain a community asset are reimbursable absent clear and convincing evidence of donative intent. *Bobrow v. Bobrow*, 241 Ariz. 592, 596-97, ¶¶ 15, 19-20 (App. 2017). Mother presented evidence that she used her separate funds to pay post-petition

operating expenses for the Lakeside Property. Father argues the expenditures were unnecessary because Mother testified the property's rental income covered its expenses—albeit "barely." But he ignores Mother's clarifying testimony that the property's ability to cover its expenses varied from month to month, and that because of Father's actions, she could no longer rely on additional community funds to be in the expense-paying account and guarantee funding for auto-payments. Father also ignores his *own* testimony that the Lakeside Property had never been profitable and varied by month between breaking even and operating at a loss. On this record, the court properly ordered reimbursement to Mother.

¶27        However, the court did not calculate the reimbursement award in accord with the evidence. First, although Mother's evidence identified her total expenses as $6,987.27, the court mistakenly used the figure $7,987.27. Second, Mother's evidence in support of the total included an entry for $1,900 described as "nate stole 1900 to XX1791." On its face, that entry describes something other than a Lakeside Property expense and therefore should not have been included in the reimbursement award. We remand for modification of the award consistent with the evidence.

B. The superior court erred by conditioning Father's avoidance of sanctions on him acting by a past date.

¶28        Father next contends the superior court erred by ordering in the February 2025 decree that he would be responsible for Mother's 2023 tax penalties if he did not provide her a tax form for the dental practice "by December 31, 2024." That order was logically faulty because it conditioned Father's avoidance of sanctions on him acting by a deadline that already expired. Consequently, we vacate the order without prejudice and remand for the superior court to fashion an appropriate order under Rule 92. *See* Ariz. R. Fam. L.P. 92 (authorizing court to use civil contempt sanctions to compel compliance with a court order or to compensate for losses caused by a failure to comply with a court order); *see also Trombi v. Donahoe*, 223 Ariz. 261, 267, ¶ 26 (App. 2009).

C. The superior court did not abuse its discretion in addressing the tax consequence caused by Mother's occupation of the Manor Court Property.

¶29        Father also contends the superior court erred by not equally dividing, as community debt, the negative tax consequence caused by Mother moving into the Manor Court Property. We disagree.

¶30　　　Because the tax consequence occurred after the marital community terminated, it was not a community debt.  *See* A.R.S. § 25-213(B).  To be sure, it was a non-speculative detriment related to community property caused by one spouse's unilateral conduct—so the court properly considered it under A.R.S. § 25-318(B) and (C) as either a "debt[] or obligation that was related to the property" or a "destruction" of property.  *Cf. Larrea v. Chand*, __ Ariz. __, ¶ 33, 580 P.3d 554, 562 (App. 2025) (holding that a non-speculative carry-forward tax credit is properly allocated as community property even if not immediately usable).  But the court was not required to equally allocate it.  *See* A.R.S. § 25-318(C)-(D).  The court reasonably found that although Mother caused the tax consequence by occupying the Manor Court Property, she acted in good faith in response to her ouster from the marital residence.  The court then reasonably balanced the considerations by tacitly assigning the consequence to Father but citing it as a reason for denying Mother's expense-reimbursement claim.  On this record, Father has shown no abuse of discretion.

## CONCLUSION

¶31　　　We vacate and remand with respect to the superior court's denial of retroactive modification of the temporary child support order based upon a child's emancipation, and with respect to the assignment of the medical-insurance obligation in the final support order.  We otherwise affirm all orders related to child support and spousal maintenance.

¶32　　　With respect to property and debts, we affirm the order reimbursing Mother for her expenses related to the Lakeside Property but remand for a recalculation of the amount. We vacate the order threatening sanctions for Father's failure to provide a tax form.  We affirm the orders regarding the tax consequence caused by Mother's occupation of the Manor Court Property.

¶33　　　After considering the reasonableness of the positions taken, as well as each party's financial resources, in the exercise of our discretion we deny the parties' competing requests for attorneys' fees and costs on appeal under A.R.S. § 25-324